Pamela Perry **WILSON,** Administratrix of the Estate of Dolly F. Chase, Deceased, Appellant

v.

**A.P. GREEN INDUSTRIES, INC.,** Flexitallic Gasket Co., a/k/a Gasket Holdings, Union Carbide Corporation, Flintkote Co. and Uniroyal, Inc., Appellees

Superior Court of Pennsylvania.

Argued June 25, 2002.

Filed Sept. 16, 2002.

Robert E. Paul, Philadelphia, for appellant.

Eric J. Kadish, Philadelphia, for Flinkote Co., for appellee.

Before: LALLY–GREEN, OLSZEWSKI, and POPOVICH, JJ.

OLSZEWSKI, J.:

¶ 1 Pamela Perry Wilson, Administratrix of the Estate of Dolly F. Chase, appeals from the August 31, 2001, order granting The Flintkote Company's (Flintkote) motion for summary judgment. We affirm.

¶ 2 On or about May 20, 1998, Dolly Chase (decedent) was diagnosed with Mesothelioma, a cancer of the lung's inner lining caused by exposure to asbestos, and she died in August of the following year. Appellant commenced a products liability action against numerous companies, including Flintkote, claiming that they manufactured or sold asbestos-containing products, which decedent inhaled and which caused her death. Specifically, the complaint alleges that Flintkote products containing asbestos were used near decedent while she worked at the Philadelphia Naval Shipyard during World War II.

¶ 3 In order to establish that decedent was exposed to and breathed in fibers from Flintkote Fibrex Cement, appellant deposed Josie Usher, who worked with decedent between 1944–45. On April 9, 2001, shortly after this deposition was taken, appellee moved for summary judgment on grounds that appellant failed to satisfy the product identification requirement. Appellant opposed this motion relying solely on Ms. Usher's testimony. The trial court granted appellee's motion on August 31, 2001, and this timely appeal followed, in which appellant raises the following questions:

1. Did the lower court abuse its discretion by failing to interpret the evidence of record in the light most favorable to Plaintiff as the non-moving party?

2. Did the lower court err by requiring the Plaintiff to prove regular, frequent and proximate exposure to defendants' asbestos products in a mesothelioma case?

Appellant's brief at 3.

■ ¶ 4 This Court will only overturn an order granting summary judgment where the trial court has "committed an error of law or abused its discretion." *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001). Summary judgment is proper where there is "no genuine issue of any material fact as to a necessary element of the cause of action." Pa.R.C.P. 1035.2(1); *Murphy,* 777 A.2d at 429. In reviewing such a grant, "[w]e must view the record in the light most favorable to the non-moving party, and [resolve] all doubts as to the existence of a genuine issue of material fact ... against the moving party." *Feidler v. Morris Coupling Co.,* 784 A.2d 812, 814 (Pa.Super.2001) (citation omitted).

■ ¶ 5 We begin by addressing appellant's second issue, concerning the level of proof a plaintiff must satisfy in an asbestos case. In order to succeed on a products liability cause of action, a plaintiff must show that: (1) "his/her injuries were caused by the product of a particular manufacturer or supplier"; and (2) the product was defective. *Jobe v. W.P. Metz Refining,* 445 Pa.Super. 76, 664 A.2d 1015, 1017 (1995). Establishing product identity in an asbestos case requires a plaintiff to produce evidence that she "inhaled asbestos fibers shed by the specific manufacturer's product." *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 544 A.2d 50, 52 (1988). Ideally, a plaintiff or a witness will be able to directly testify that plaintiff breathed in asbestos fibers and that those fibers came from defendant's product. Without such direct evidence, plaintiff must rely upon circumstantial evidence of exposure. Such evidence may not merely demonstrate the "presence of asbestos in the workplace," but must show that plaintiff "worked in the vicinity of the product's use." *Andaloro v. Armstrong World Indus., Inc.,* 799 A.2d 71, 86 (Pa.Super.2002) (citing *Eckenrod,* 544 A.2d at 52). Specifically, a plaintiff's evidence of exposure and product identity must show that she "worked, on a regular basis, in physical proximity with the product, and that [her] contact with it was of such a nature as to raise a reasonable inference that [s]he inhaled asbestos fibers that emanated from it." *Coward v. Owens–Corning Fiberglas Corp.,* 729 A.2d 614, 622 (Pa.Super.1999) (citing the frequency, regularity, and proximity standard from *Eckenrod,* 544 A.2d at 53).

■ ¶ 6 Appellant claims that this standard, which emerged from *Eckenrod,* does not apply here, because: (1) her decedent developed Mesothelioma; and (2) the standard only applies to circumstantial evidence, not direct evidence. Appellant's Brief at 11. She claims that Josie Usher's testimony provides direct evidence that de-

cedent inhaled asbestos fibers from appellee's product.

¶ 7 We reject appellant's contention that the *Eckenrod* standard should not apply to a disease such as Mesothelioma, which can be caused by inhaling small amounts of asbestos. The fact that minor amounts of asbestos may cause this disease has no bearing on the requirement that plaintiff must actually inhale asbestos fibers from the specific manufacturer's product.

¶ 8 At oral argument, appellant pointed to this Court's recent decision in *Gutteridge v. A.P. Green Services, Inc.,* 804 A.2d 643 (Pa.Super.2002), as support for its contention. In light of other contemporary cases handed down by this Court, we do not read *Gutteridge* as creating a distinction between asbestos-related cases involving lung cancer and those involving Mesothelioma. In *Gutteridge,* a panel of this Court emphasized that while most asbestos plaintiffs, like the plaintiff in *Eckenrod,* develop lung cancer, Mr. Gutteridge developed Mesothelioma, which is "medically attributable" to asbestos exposure. *Id.* at 193. In setting forth the level of proof needed to survive a summary judgment motion, the panel cited directly to *Eckenrod. Id.* The Court then stressed that although the plaintiff does not need to show "the specific role played by each fiber within the body[,]" she must prove that she "inhaled asbestos fibers shed by the specific manufacturer's product." *Id.* This is the same standard that we have articulated in all of our recent asbestos cases involving both lung cancer and Mesothelioma.

¶ 9 In *Andaloro,* a Mesothelioma case decided two months before *Gutteridge,* we ruled that in order to satisfy this requirement, "[t]he evidence [of exposure] must demonstrate that the plaintiff worked, on a regular basis, in physical proximity with the product, and that his contact was of such a nature as to raise a reasonable inference that he inhaled asbestos fibers that emanated from it." *Andaloro,* 799 A.2d at 86. The mere fact that we did not cite this language in *Gutteridge* to explain the nature of the exposure required in no way signals an abandonment of this standard.

¶ 10 Our holding in *Gutteridge* illustrates this fact. We held that the plaintiff presented sufficient evidence of exposure to allow a reasonable person to infer that her decedent inhaled asbestos fibers from the defendant's product. *Gutteridge,* 804 A.2d at 653–54. In reaching this conclusion, we pointed to the testimony of a coworker who worked in the same vicinity as decedent for eight years. *Id.* at 653. He testified that, during that time, he produced dust by sanding asbestos products and that no one who worked there could have avoided inhaling this dust. *Id.* This evidence demonstrated that the decedent worked in proximity to the defendant's asbestos products on a regular basis and therefore satisfied *Eckenrod.*

■ ¶ 11 After thoroughly reviewing the evidence here in a light most favorable to appellant, we find it legally insufficient to establish plaintiff's exposure to Flintkote Fibrex Cement. We reject appellant's contention that she presented direct evidence that her decedent inhaled Flintkote asbestos fibers, and that, therefore, she does not need to prove regular and proximate exposure. Contrary to appellant's assertion, Josie Usher's testimony contains no direct evidence that decedent inhaled asbestos manufactured by appellee. She testified that workers used many different cement products around her and decedent, all of which made dust. N.T., 3/21/00, at 140. The following excerpts from this deposition illustrate her inability to identify Flintkote as a product decedent specifical-

ly breathed in, or to which she was specifically exposed:

Q. . . . Where did you see Flintkote cement?

A. In the same place (referring to a previous answer).

Q. Okay. That would have been between the ship and the tool house?

A. That's correct. That is correct.

\* \* \* \* \* \*

Q. And you can't tell us whether or not you saw Ms. Chase use it, is that correct?

A. No, not really.

\* \* \* \* \* \*

Q. . . . Do you remember men using it in the area where you and Dolly Chase were working?

\* \* \* \* \* \*

A. They were using different materials . . . . I can't say at that particular time they were using it.

\* \* \* \* \* \*

Q. Did you ever see anybody using that product?

A. . . . I can say this to you, if it was Flintkote or the other one, at that particular time and at my age, I did not really know that they were using these—they were using the products, but the name on them at that particular time, I wasn't interested in it.

N.T., 3/21/00, at 133, 62, 137–38, 134–35.

■ ¶ 12 Despite Ms. Usher's obvious inability to remember the use of these products around her or decedent, appellant's counsel mischaracterized her answer

and asked two leading questions.[1] The answers she provided were completely opposite the statements she made without prompting just moments earlier. Answers to such inappropriate leading questions are not admissible and may not serve as the basis for surviving a summary judgment motion. Pa.R.E. 611; *See also Pascone v. Thomas Jefferson Univ.*, 357 Pa.Super. 524, 516 A.2d 384, 387 (1986). The trial court did not err, therefore, in refusing to consider this portion of Ms. Usher's deposition.

¶ 13 Since appellant offered no direct evidence that decedent inhaled any asbestos-containing Flintkote product, the court correctly ruled that she needed to satisfy the *Eckenrod* standard, *i.e.*, that decedent worked in proximity to such a product on a regular basis. Ms. Usher's testimony clearly failed to establish this type of exposure, and summary judgment was proper.

■ ¶ 14 Even if Ms. Usher's answers to counsel's leading questions were admissible, we would rule that her testimony, when taken as a whole, fails to demonstrate that decedent inhaled fibers from Flintkote Fibrex Cement. Ms. Usher stated that, at most, decedent was exposed to dust from appellee's product "at one time or another." N.T., 3/21/00, at 138–39. This testimony is far too vague and unsubstantiated to prove even one instance of exposure to the product, let alone to establish that decedent regularly worked in proximity to it. *See Coward*, 729 A.2d at 624. The inadequacy of this testimony becomes even clearer when we consider Ms. Usher's previous response that she could not remember anyone using the Flintkote

---

1. Q. Do you believe—is what you're saying here to me then is that at one time or another during the year people would use this Flintkote Fibrex Cement around you and Dolly Chase? . . .[objection]. . . A. That's what I'm saying. That's what I'm saying.

Q. And do you think that this product, this fibrex cement that they were using, made dust? . . . [objection] . . . A. All of the products that I have stated, all of them, made dust.

product around decedent. When a plaintiff's lone witness contradicts herself in this fashion, such testimony cannot establish a genuine issue of material fact.

¶ 15 Order affirmed.