Judith R. BUGOSH, Administratrix of the Estate of Edward J. Bugosh, Deceased and Judith R. Bugosh, in her own Right

v.

ALLEN REFRACTORIES COMPANY, Allied Glove Corporation, American Smelting and Refining Company, as Successor–in–Interest to Lake Asbestos of Quebec, Ltd., Balph, W.G. Company, Capco Pipe Company, Inc., f/k/a Cement Asbestos Products Company, Certainteed Corporation, Corhart Refractories Co., Garlock, Inc., George V. Hamilton, Inc., Hinkel–Hoffman Supply Company, I.U. North America, Inc., as Successor by Merger to the Garp Company, Formerly Known as the Gage Company, Formerly Known as Pittsburgh Gage and Supply Company, Industrial Holdings Corporation, f/k/a Carborundum Company, J.H. France Refractories Company, Keystone Pipe & Supply Company, Mallinckrodt Group, Inc., in its Own Right and as Successor–in–Interest to Imcera Group, Inc. and International Minerals and Chemical Corporation, and as Successor–in–Interest to Allied Industrial Material Corporation and as Successor–in–Interest to E.J. Lavino Company Melrath Supply & Gasket Company, Metropolitan Life Insurance Company, a/k/a Metropolitan Insurance Company, Ohio Lime Corporation, Quigley Company, Inc., Safety First Industries, Inc., in its own Right and as

Successor–in–Interest to Safety First Supply, Inc., Saint–Gobain Abrasives, Inc., Formerly Known as Norton Company, Unifrax Corporation, f/k/a Carborundum Company, Zurn Industries, a/k/a Erie City Iron Workers.

Appeal of Taylored Industries, Inc.

Judith R. Bugosh, Administratrix of the Estate of Edward J. Bugosh, Deceased and Judith R. Bugosh, in her own Right

v.

I.U. North America, Inc., as Successor by Merger to the Garp Company, Formerly Known as the Gage Company, Formerly Known as Pittsburgh Gage and Supply Company, E.W. Bowman, Inc., Emhart Glass Inc., Formerly Known as Emhart Manufacturing Company, Formerly Known as Hartford Empire, F.B. Wright Company, Surface Combusion, Inc., Taylored Industries, Inc.

Appeal of I.U. North America.

Judith R. Bugosh, Administratrix of the Estate of Edward J. Bugosh, Deceased, and Judith R. Bugosh, in her own Right

v.

E.W. Bowman, Inc., Emhart Glass Inc., Formerly Known as Emhart Manufacturing Company, Known as Hartford Empire and its Division Hartford Empire, F.B. Wright Company, I.U. North America, Inc., as Successor by Merger to the Garp Company, Formerly Known as the Gage Company, Formerly Known as Pittsburgh Gage and Supply Company, Surface Combustion, Inc., Taylored Industries, Inc.

Appeal of Surface Combustion, Inc.

Superior Court of Pennsylvania.

Argued March 15, 2007.

Filed July 18, 2007.

Reargument Denied Sept. 25, 2007.

Matthew R. Wimer, Oakmont, for Taylored, appellant.

Jennifer E. Watson, Pittsburgh, for I.U. North, appellant.

Richard R. Malone, Toledo, OH, and Francis J. Stanek, Morgantown, WV, for Surface, appellant.

John R. Kane, Pittsburgh, for Bugosh, appellee.

BEFORE: JOYCE, BENDER and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 In these three unconsolidated appeals, Appellant manufacturers [1] challenge the $1,400,000 judgment against them [2] in a products liability action based on allegations that Appellee's decedent Edward J. Bugosh contracted malignant mesothelioma [3] from exposure to their asbestos-con-

---

1. Taylored Industries, Inc., is a fabricator and distributor of thermal and electrical insulation products. I.U. North America, Inc., formerly Pittsburgh Gage and Supply Co., is a supplier/distributor of construction materials. Surface Combustion, Inc. provided glass ovens, termed lehrs at Anchor Hocking Glass Company.

2. Two other defendants listed on the verdict sheet settled, and are not involved in these appeals.

3. Mesothelioma, a cancer of the tissue surrounding the lung, is rare except in those exposed to asbestos, and is specifically attributable to such exposure. *Chenot v. A.P. Green*

taining products. We address, *inter alia,* the request by Appellant Taylored to mold the verdict to reflect funds received by Appellee from the Manville Personal Injury Settlement Trust, finding, pursuant to the requirements of the Trust Distribution Process, that Appellant's claim has been waived. We affirm as to all three judgments.

¶ 2 Appellee's decedent was exposed to asbestos through his employment at two different jobs during the period 1957 to 1966. The first of these jobs, lasting until 1962, which involved laying asbestos cement water and sewer lines for a Pittsburgh construction company, required him to cut pipe, printed with the word "asbestos," which had been delivered to the work site by trucks bearing the logo "Pittsburgh Gage," the predecessor of Appellant I.U. North America, Inc. (IUNA). The cutting process released clearly visible dust. Appellee's decedent was later employed in the decorating division of Anchor Hocking Glass Plant (AHG), a facility manufacturing various types of glass bottles. There his exposure to asbestos containing products included, but was not limited to the mixing of asbestos cement for bricks used to repair lehrs,[4] and collecting for disposal asbestos pipe covering and other such materials used for replacement or repair of AHG equipment by Surface employees.

¶ 3 Appellee's decedent was diagnosed with mesothelioma in December of 2003, and died during the course of the trial in November of 2005, aged 70. The jury returned a verdict of $1,400,000 against all defendants, and these appeals followed. We will address each Appellant's claims separately. First however, we examine Appellee's contention that the untimeliness of these appeals deprives this Court of jurisdiction to hear them.

¶ 4 The jury returned its verdict on November 16, 2005. On November 25, Appellee moved for delay damages. Appellants filed their respective post trial motions on November 23, (Taylored), 28 (Surface Combustion), and 29 (IUNA). On April 7, 2006, Appellee entered judgment on the verdict pursuant to Pa.R.C.P. 227.4(1)(b), which provides for such procedure where the trial court fails to dispose of post trial motions within 120 days of their filing, and specifies that a judgment so entered is final and not subject to reconsideration.

¶ 5 Appellants moved to strike the judgment in documents filed April 12 and 13, arguing that Pa.R.C.P. 238(c)(3)(1) prohibits the entry of judgment upon the expiration of the 120 day post trial motions period where a request for delay damages is pending. Indeed, a Note to Rule 227.4(1)(b) specifically refers to the Rule 238(c)(3)(1) prohibition. On April 13, Appellee withdrew the request for delay damages, and on April 26 responded to Appellants' strike motions contending that judgments entered under Rule 227.4(1)(b) may not be stricken, and that because the motion for delay damages had been withdrawn, Rule 238(c)(3)(1) was no longer applicable. The trial court disagreed, and on the same date that the court struck the judgment, April 28, 2006, Appellee reentered it.

¶ 6 Before this Court, Appellee has sought to quash the appeals, again advancing the claim that April 7, not April 28, is the operative date for entry of judgment, making Appellants' notices of appeal, filed

*Services, Inc.,* 895 A.2d 55, 58 n. 3 (Pa.Super.2006).

4. Of the five lehrs present in the decorating division of the AHG plant, three were described by Appellee as bearing plaques identifying them as Surface products.

May 25 and 26, 2006, untimely. We are not persuaded.

¶ 7 The principal basis of Appellee's argument is derived from our decision in *Morningstar v. Hoban*, 819 A.2d 1191 (Pa.Super.2003), *appeal denied*, 577 Pa. 690, 844 A.2d 553 (2004). There we quashed an appeal from entry of judgment on the basis of untimeliness, and noted that judgments entered pursuant to Rule 227.4(1)(b) were immune from reconsideration. However, in that case no motion for delay damages was pending at the time the appellant first praeciped for entry of judgment on the verdict. In fact, the *Morningstar* Court specifically noted that "Appellee's motion for delay damages was resolved ... long before Appellant filed a praecipe for the entry of judgment." *Id.* at 1195. Here, Appellee's motion for delay damages was not withdrawn until a week after the entry of judgment, and Appellee provides us with no authority supporting the notion that the withdrawal must be accorded retroactive effect. Accordingly, these appeals are properly before the Court.

▪ ¶ 8 As to Appellants' claims on appeal,

[f]or liability to attach in a products liability action, plaintiff must prove that defendant's product caused plaintiff's injury. *Eckenrod [v. GAF Corp.],* [ ] 375 Pa.Super. 187, 544 A.2d 50 [, 52 (1988) ]. In asbestos litigation, plaintiff must present evidence that he inhaled asbestos fibers shed by defendant's product. *Id.* In *Wilson v. A.P. Green Industries, Inc.,* 807 A.2d 922 (Pa.Super.2002), we stated "[i]deally, a plaintiff ... will be able to directly testify that plaintiff breathed in asbestos fibers and that those fibers came from defendant's product." *Id.* at 924. Without such direct evidence, plaintiff must rely on circumstantial evidence of exposure;

specifically, plaintiff must meet the *Eckenrod* test. *Id.*

*Gilbert v. Monsey Products Co.,* 861 A.2d 275, 276 (Pa.Super.2004), *appeal denied,* 582 Pa. 718, 872 A.2d 1199 (2005). The *Eckenrod* standard requires a plaintiff to show "the frequency of the use of the product and the regularity of plaintiff's employment in proximity thereto." *Id.* at 53 (citation omitted).

¶ 9 Appellant Taylored has presented three issues for our review challenging the trial court's refusal: (1) to grant its motion for a directed verdict; (2) to grant its new trial motion; and (3) to mold the verdict to reflect Appellee's receipt of funds from the Manville Trust.

¶ 10 Appellant's first issue advances the claim that Appellee's case, which rested on direct evidence of the decedent's exposure elicited from a coworker, failed to meet the burden of proof, and thus the trial court erred in refusing to grant its motion for a judgment notwithstanding the verdict.

▪ ¶ 11 We first note that "[t]he entry of judgment notwithstanding a jury verdict ... is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury." *Neal by Neal v. Lu,* 365 Pa.Super. 464, 530 A.2d 103, 110 (1987) (citation omitted).

There are two bases upon which a court may enter a judgment n.o.v.: (1) the movant is entitled to judgment as a matter of law, or (2), the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse[ly] to the movant, the law nonetheless requires a verdict in [his] favor; whereas with the second, the court reviews the evidentiary record and concludes that

the evidence was such that a verdict for the movant was beyond peradventure.

\* \* \* \* \*

 We have held that in reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a court should only enter a judgment n.o.v. in a clear case and must resolve any doubts in favor of the verdict winner. A trial court's grant or denial of a judgment n.o.v. will be disturbed only for an abuse of discretion or an error of law. In examining this determination, [the appellate court's] scope of review is plenary, as it is with any review of questions of law.

*Quinby v. Plumsteadville Family Practice, Inc.*, 589 Pa. 183, 907 A.2d 1061, 1074 (2006) (citations and internal quotation marks omitted). Nor will our Court reverse the trial court's grant or denial of a new trial unless its decision presents a gross abuse of discretion or an error of law. *Mitchell v. Gravely International, Inc.*, 698 A.2d 618, 619 (Pa.Super.1997). The appellate courts have long held that the trial court is required to grant a new trial only where a jury verdict is "against the clear weight of the evidence or [where] the judicial process has effected a serious injustice." *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123, 125 (1969) (citing *Pritchard v. Malatesta*, 421 Pa. 11, 218 A.2d 753, 754 (1966)).

 ¶ 12 Appellant's assertion is based on an objection to the evidence describing the contact of Appellee's decedent with the carcinogenic product. Specifically, Charles Riser, a co-worker of the decedent's at AHG, testified that as a storeroom attendant at the facility, he handled and distributed to workers various asbestos containing products, one of which was the transite mill board supplied by Appellant Taylored, and used in repairing tanks. During his deposition, Appellee's decedent testified to his involvement with tank repair during his employment at AHG. Appellant produced testimony to the effect that Riser could only have supplied Appellee's decedent with the asbestos material during the period from March of 1965, when Taylored purchased the franchise rights to distribution of transite board, until March 1966, when Appellee's decedent left AHG. Although Riser specifically remembered handing the material from Taylored to Appellee's decedent, he could not say with certainty that the transfer occurred during the critical period. Thus, Appellant contends, the requisite direct proof of exposure was lacking, the evidence is speculative, and, as such, insufficient.

 ¶ 13 Appellee correctly points out, however, that the matter is one of weight for the jury. Indeed, "[t]he weight and credibility of [the appellant's] evidence [are] for the jury to determine. Conflicts in the evidence [a]re for the jury to resolve." *Juliano v. Johns–Manville Corp.*, 416 Pa.Super. 321, 611 A.2d 238, 240 (1992), *appeal denied, Fibreboard Corp. v. Juliano*, 533 Pa. 645, 622 A.2d 1376 (1993). The facts in *Juliano*, in which a claim of evidentiary insufficiency was also advanced, are illuminating. There, too, a co-worker offered direct evidence of the plaintiff's exposure to asbestos, as did the plaintiff himself in a way similar to the Appellee's decedent herein. Juliano's co-worker, who had not known the plaintiff, recalled that the plaintiff had worked in the same areas as he did, using the same asbestos containing products manufactured by the appellant. The plaintiff had testi-

fied concerning his exposure to dust while using a form of the product. Moreover, in an analog to the instant matter, in *Juliano* the defendant had offered rebuttal evidence to show that the product had no longer contained asbestos by the time the plaintiff commenced the employment which required its use. All of these identification elements were, our Court found, for the jury to resolve. Appellant herein has provided us with no reason to depart from this conclusion. *Contrast Fiffick v. GAF Corp.*, 412 Pa.Super. 261, 603 A.2d 208, 211 (1992) (summary judgment for appellee affirmed where no evidence introduced by appellant of "when appellee's product had been used, where it had been used, or how frequently it had been used [nor] that plaintiff-appellant had worked at or near a place where appellee's asbestos product had been used or manipulated.")

¶ 14 Appellant next contends that because the verdict was against the weight of the evidence, it should have been awarded a new trial. In presenting this issue Appellant merely reiterates, in abbreviated form since the entire argument section is comprised of three sentences, the contention already expounded in its previous claim. Our response is also the same: the matter is one for the jury to resolve and it did so adversely to Appellant. We will not disturb the result.

¶ 15 Finally, Appellant Taylored argues that the verdict should have been molded to reflect Appellee's receipt of funds from the Manville Personal Injury Settlement Trust. It requests that we remand to the trial court "to obtain documentation of Appellee's claim against the trust, and then reduce the verdict by that amount." (Brief of Appellant Taylored at 19). Appellant contends that molding the verdict is mandatory under our Supreme Court's decision in *Baker v. ACandS*, 562 Pa. 290, 755 A.2d 664 (2000), and this Court's hold-

ing in *Andaloro v. Armstrong World Industries*, 799 A.2d 71 (Pa.Super.2002), *appeal denied*, 573 Pa. 682, 823 A.2d 143 (2003).

¶ 16 We note that "when a plaintiff settles his or her claims with the Manville Trust, the terms of the settlement release govern the allocation of liability between the remaining defendants. Accordingly, the release also determines the amount of the set-off against liability to which the remaining defendants are entitled due to the Trust's participation." *Id.* at 78 (citing *Baker, supra* at 667, 669). Thus our determination extends beyond the interests of Appellant Taylored.

¶ 17 The trial court denied Appellant's motion to mold the verdict on grounds that it had been untimely filed pursuant to the 10 day limitations period of Pa.R.C.P. 227.1(c); the verdict was rendered on November 16, 2005, and the Motion to Mold the Verdict on November 28, 2005. However, as Appellant points out, the 10th day, November 26, 2005, fell on a Saturday. Pa.R.C.P. 106(b) provides, "Whenever the last day of any [period of time referred to in any rule] shall fall on Saturday or Sunday ... such day shall be omitted from the computation." Accordingly, the trial court's finding of untimeliness under the Pennsylvania Rules of Civil Procedure was incorrect.

¶ 18 The question then becomes whether remand is necessary in this case. Appellant is correct that the appellate authorities examining the issue, *Baker* and *Andaloro*, require unresolved claims against the Trust to be returned to the trial court, as must those instances in which the set-off or requested reduction of the damage award was not properly calculated pursuant to the terms of the Trust Disposition Process (TDP) and the Uniform Contribution Among Tortfeasors Act, 42 Pa.C.S.A. § 8326. Here, however, we

have been provided with no information as to whether such a claim was ever filed. Appellee has made no admission to having brought such a claim, arguing only that the issue has not been preserved. We agree, but for a reason other than the one she suggests.

¶ 19 The TDP [5] was adopted pursuant to a settlement intended to restructure the Trust created to resolve all health claims in a class action suit against Johns–Manville Corporation after the assets of the Trust proved inadequate to cover more than one tenth of the anticipated claims. *See Baker, supra* at 666 n. 2. It applies to actions in which the liability verdict was rendered after February 18, 1995. Section (f) of the TDP provides a specific and uncomplicated procedure for obtaining accurate information concerning claims against the Trust:

**(f) Verification of settlement information.** In response to a Co–Defendant request, the Trust and the claimant shall promptly verify, no later than the start of jury selection in the trial of an action by the claimant against the Co–Defendant, the fact of any settlement or any filing by the claimant of a claim with the Trust; and shall provide information regarding the amount and terms of any such settlement at the time and with the detail required by applicable law.

¶ 20 There is no indication that Appellant Taylored or any of the other appellants ever sought verification of a claim, and thus failed to activate Appellee's obligation to disclose. Indeed, at argument on Appellant Taylored's post trial motion to mold the verdict, Appellee pointed out that no request had ever been made for evidence of any dealings she may have had with the Trust to be placed before the court. (N.T., 5/17/06, at 38). Further, Appellee declined, at that point in the proceedings, to disclose the amount of funds received from the Trust; Appellant Taylored made then and makes now no specific challenge to her refusal; neither of the remaining appellants has even raised an issue concerning the Trust. Thus Appellant's claim was not preserved, and we need not further address it. Accordingly, as to Appellant Taylored, we affirm.

¶ 21 Appellant I.U. North America (IUNA) presents us with two claims. It first argues that it is entitled to a new trial on liability because the trial court erred in failing to apply Section 2, Restatement (Third) of Torts instead of Section 402A of the Restatement (Second) of Torts to Appellee's strict liability claims against it as a supplier rather than a manufacturer of asbestos containing products. Appellant also assigns error to the court's refusal to allow it to present the videotaped deposition of a deceased witness.

¶ 22 As noted above, a new trial need only be granted where a jury verdict is "against the clear weight of the evidence or [where] the judicial process has effected a serious injustice." *Austin, supra* at 125. The thrust of Appellant's argument is that a miscarriage of justice has occurred because the trial court applied the law currently accepted as authoritative in Pennsylvania on the subject of strict liability rather than precepts expressed in a concurrence to our Supreme Court's decision in *Phillips v. Cricket Lighters,* 576 Pa. 644, 841 A.2d 1000, 1012–23 (2003), *rev'd,* 584 Pa. 179, 883 A.2d 439 (2005). The tenor of the concurrence was the suggestion that the negligence concepts included in Section 2 of the Restatement (Third), be intro-

---

**5.** Stipulation of settlement and Trust Distribution Process documents are annexed to the opinion in *In re Joint Eastern & Southern Districts Asbestos Litigation,* 878 F.Supp. 473 (E.D.N.Y.1995).

duced into Pennsylvania's strict liability law. Because that has not occurred and the appellate courts have consistently declined to adopt a negligence based theory, the trial court can hardly be said to have erred in refusing to proceed against established authority. As Appellee points out, the *Cricket* Court majority has "bluntly stated that negligence concepts have no place in a case based on strict liability. Indeed, Section 402A of the restatement (Second) of Torts makes it clear that the imposition of strict liability for a product defect is not affected by the fact that the manufacturer or other supplier has 'exercised all possible care.' " *Id.* at 1006 (citation omitted). As this Court has observed in *Andaloro, supra,* Pennsylvania's judicature in the area of strict liability rests on the premise that where a plaintiff has been injured by a defective product, "as between the innocent consumer and a manufacturer of a defective product, the manufacturer should bear the loss." *Id.* at 81 (quoting *Baker v. AC & S,* 729 A.2d 1140, 1152 n. 34 (Pa.Super.1999)), *aff'd at Baker, supra.* Until and unless our Supreme Court alters its approach to strict liability, we will continue to adhere to established principles.

¶ 23 Appellant IUNA also argues that it is entitled to a new trial on liability because it was refused permission to introduce to the jury the deposition testimony of deceased corporate representative Allyn Kriel. We note that the admission or preclusion of evidence is a matter discretionary with the trial court, whose evidentiary decisions will not be disturbed absent an abuse of its discretion. *Beaumont v. ETL Services, Inc.,* 761 A.2d 166, 172 (Pa.Super.2000).

¶ 24 The purpose of the testimony, which was taken in 1998, six years prior to Appellee's having filed suit and in connection with another action, was initially described as providing "corporate history." The deponent had been asked about products the company supplied, making reference to a certain catalogue, from 1980, and its index to discuss available items. Absent from this volume, pertinent to a period 18 years after the decedent left the job where he came into contact with asbestos concrete pipes, was any mention of such products, and thus no questions were ever posed to the deponent concerning them. Defense counsel made clear that, in fact, the videotape would be introduced specifically to demonstrate that Appellant "didn't supply asbestos cement pipe. Its [sic] not a product that the Gage Company supplied." (N.T., 11/10/05, afternoon session, at 604).

¶ 25 The trial court refused Appellant permission to replay the deposition on grounds that it was hearsay not within the parameters of Pa.R.E. 804(b)(1). That rule exempts prior testimony from the proscription of hearsay by an unavailable declarant where "the party against whom the testimony is now offered … had an adequate opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Here, the declarant was deceased, and obviously unavailable. Appellant argues that the deposition was captioned *In re All Asbestos Cases Filed in Western Pennsylvania and West Virginia,* and was thus taken with a view to its universal introduction as the legal equivalent of one size fits all, because "the attorneys present at the depositions attacked the testimony in such a manner to protect all future Plaintiffs' interests." (N.T., 11/10/05, afternoon session, at 604). Thus, the argument goes, Appellee's lack of opportunity to "develop the testimony," concerning asbestos cement pipes was irrelevant, and her interests adequately represented. We are unconvinced.

¶ 26 Appellee contended that because the mechanism of her decedent's exposure to asbestos, via cement pipes, was unusual, she was not "constructively represented," that is, no party in the previous action "had the incentive to vigorously protect the same interests that the parties to the current action would want to protect." *See Beaumont, supra* at 174. Indeed, as noted, Appellee pointed out the omission of any questions concerning asbestos cement pipes, and its absence from the 1980 product list. Appellant conceded that the plaintiffs' attorney who appeared on the tape had no incentive to cross-examine concerning any issues which might relate to the matter under consideration because he was not "designated for any issues related to this case." (N.T., 11/10/05, afternoon session, at 603). In fact, the openly declared reason for presentation of the testimony was to allow the jury to infer from the absence of any reference to asbestos cement pipe that Appellant was not responsible for the exposure to it of Appellee's decedent. Thus the hearsay was specifically intended to demonstrate the truth of the matter asserted without that degree of trustworthiness usually accorded to prior recorded testimony, and Appellee's interests were not protected. For those reasons the evidence was inadmissible, and because the product was admittedly not germane to the period discussed during the deposition, it was also irrelevant.

¶ 27 Moreover, Appellant's claim that Appellee was estopped from contesting the introduction of the deposition tape is similarly unpersuasive. Appellant contends that because Appellee's counsel identified the deponent as a liability witness in other, unrelated, cases as a party opponent, and his testimony thus admissions, Appellee here was prevented from denying the applicability of the hearsay exception to his deposition by the doctrine of judicial estoppel which disallows such a change of position. In so arguing, Appellant principally relies on our Supreme Court's decisions in *Sunbeam Corp. v. Liberty Mutual Insurance Co.,* 566 Pa. 494, 781 A.2d 1189 (2001), and *Trowbridge v. Scranton Artificial Limb Co.,* 560 Pa. 640, 747 A.2d 862 (2000). Its reliance is unjustified, as the objectionable matter does not even approach a situation to which the term judicial estoppel is applicable.

¶ 28 The doctrine of judicial estoppel holds that "[a]s a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion **in a previous action,** if his or her contention was successfully maintained." *Id.* at 864 (emphasis added). "The purpose of this doctrine is to uphold the integrity of the courts by preventing parties from abusing the judicial process by changing positions as the moment requires." *Id.* at 865 (citation and internal quotation marks omitted). First, the position termed inconsistent and therefore estopped by Appellant did not occur in a previous action involving this same plaintiff/Appellee, only her counsel. Moreover, and more critically, there was no "contention successfully maintained" even in this matter as the name of the deponent does not appear on Appellee's witness list. Indeed, Appellant even concedes that the term judicial estoppel is not precisely applicable, since the use of the depositions "didn't happen in the same case," that is, here, counsel "opted not to," use the deposition for any purpose. (N.T., 11/15/05, morning session, at 829–30). Accordingly, the trial court properly precluded presentation of the videotape, as it scarcely could have done otherwise, and we affirm as to Appellant IUNA.

¶ 29 Finally, we address the issues raised by Appellant Surface Combustion, Inc., which assigns error to the trial

court's refusal to grant its motion for a compulsory non-suit or a directed verdict based on insufficient evidence of the decedent's exposure to asbestos dust; the court's refusal to grant its motion in limine and sustain its objections to hearsay evidence elicited from Appellee; and the court's refusal to grant a mistrial on the basis of the allegedly inevitable prejudice against it produced by the death of Appellee's decedent during trial. Again, we affirm.

¶ 30 Pa.R.C.P. 230.1 provides that entry of a nonsuit is proper where "the plaintiff has failed to establish a right to relief." The motion for compulsory non-suit allows a defendant to test the sufficiency of the plaintiff's evidence and may be entered only in cases where it is clear that the plaintiff has not provided sufficient evidence to establish all the elements necessary to maintain a cause of action. In making its determination, the trial court must give the plaintiff the benefit of all reasonable inferences arising from the evidence present and must resolve any conflict in favor of the plaintiff. *Rachlin v. Edmison,* 813 A.2d 862, 868 (Pa.Super.2002) (*en banc*) (quoting *Parker v. Freilich,* 803 A.2d 738, 744 (Pa.Super.2002), *appeal denied,* 573 Pa. 659, 820 A.2d 162 (2003)). To assess Appellant's claim that a directed verdict should have been entered in its favor based on insufficient evidence of the decedent's asbestos exposure, we apply the same standard of review as for a JNOV, noted above. *See Quinby, supra.*

¶ 31 Although Appellant insists that "no asbestos dust was released from the Surface lehr equipment during the normal operation of the equipment at AHG where [Appellee's decedent] was employed," (Appellant's Brief at 12), the trial court observed that

[Appellee] testified that in 1957 she observed her husband being exposed to asbestos dust while sweeping the floor in conjunction with repair work conducted by Surface employees. She saw her husband doing this after a lehr in the decorating room—adorned with a plaque identifying it as a Surface product—was torn down for modifications. This work was conducted in the presence of both [Appellee's decedent] and [Appellee] by laborers identified by [Appellee's] father as Surface employees, observed by [Appellee] using cement bags clearly labeled "asbestos." [Appellee] testified that while he worked [the decedent] never left the area where Surface was engaged in its repairs, and that following their initial, asbestos-laden installation work, Surface employees would later return for more such repair work on the same lehr.

(Trial Ct. Op. at 2). These same facts effectively contradict Appellant's further contention that no proof was presented that the decedent "worked in frequent, regular and close proximity to" asbestos products, *per Eckenrod, supra.* On the basis of this evidence, the trial court concluded that Appellant was not entitled to a directed verdict. Appellant has provided us with no reason to disagree.

¶ 32 Appellant next contends that the trial court erred in refusing to grant its motion in limine and sustained its objections to hearsay statements by Appellee as it argues that these are "the only evidence which supported a finding that any employee of [Appellant] was present at the [decedent's] place of employment while [the decedent] was present." (Appellant's Brief at 8).

¶ 33 When assessing the propriety of a ruling on a motion *in limine,* this Court applies the standard applicable to the particular evidentiary matter under

consideration. *Delpopolo v. Nemetz*, 710 A.2d 92, 94 (Pa.Super.1998), *appeal denied*, 1999 WL 144492 (Pa. filed March 16, 1999). The admission or exclusion of evidence is a decision subject to the discretion of the trial court whose decision will not be disturbed absent a clear abuse of that discretion, or an error of law. *Campbell v. Attanasio*, 862 A.2d 1282, 1288–89 (Pa.Super.2004), *appeal denied*, 584 Pa. 684, 881 A.2d 818 (2005).

■■■ ¶ 34 Appellant's specific objection is to the admission of statements made to Appellee by her father, a millwright at AHG.[6] When he worked with outside contractors, employees of Appellant, which she had observed him do, he announced their arrival to his daughter by Appellant's company name: "Surface Combustion is here, again." (N.T., 11/10/05, morning session, at 450). The trial court found that although this information was indisputably hearsay, it was subsumed under the rubric of the present sense exception to the rule excluding hearsay.

■■■ ¶ 35 Pa.R.E. 803(1) defines the present sense exception as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." "The exception allows testimony concerning events observed by the declarant regardless of whether or not the declarant was excited. The statement must be made at the time of the event or so shortly thereafter that the declarant would be unlikely to have the opportunity to decide to make a false statement." *Harris v. Toys "R" Us–Penn, Inc.*, 880 A.2d 1270, 1279 (Pa.Super.2005), *appeal denied*, 586 Pa. 770, 895 A.2d 1262 (2006).[7] Appellant contends that the statement was excludable because it had been made only once, in the distant past, at a moment time not necessarily related to the decedent's exposure to asbestos, and in an off-hand manner. The record reveals Appellant's attempts on cross-examination of Appellee to attack the plausibility of the statements on those very grounds. As the trial court properly found, all of these concerns are matters of weight for the jury, which in its role as fact finder, assesses the "worth of testimony." *Hyang v. Lynde*, 820 A.2d 753 (Pa.Super.2003), *appeal denied*, *Shin v. Lynde*, 577 Pa. 681, 843 A.2d 1239 (2004). *See also Juliano, supra.* As to Appellant's claim of prejudice, Appellee testified categorically that her father's statement was not the only source of her information concerning the identity of the outside contractors. Therefore the admission of this evidence was not an abuse of discretion.

■■■ ¶ 36 Finally, Appellant contends that its motion for a mistrial should have been granted because the decedent's death during trial "inevitably and plainly tainted further proceedings with the jury's natural feelings of sympathy for his widow." (Appellant's Brief at 40). "Generally, the granting or refusal of a mistrial is a matter within the discretion of the trial judge, and his or her decision will not be

---

**6.** Appellant complains that "no effort was made to explain why the person who made the statement was not being presented as a witness." (Appellant's Brief at 38). In fact, Appellee testified that her father, the declarant, was 94 and suffered from dementia. (N.T., 11/10/05, morning session, at 391).

**7.** It has been held by the Federal Courts that "[a]n assertion of identification made upon encountering a person is a present sense impression." David F. Binder, *Hearsay Handbook*, § 8:1 (4th ed.2001). This interpretation of the present sense impression exception to the prohibition against hearsay would seem clearly to be encompassed by the Pennsylvania Rules of Evidence, and is particularly germane under the circumstances of this case.

overruled by an appellate court except for manifest, clear, or palpable error amounting to an abuse of discretion." *Standard Pennsylvania Practice* 2d, § 91:134(222).

¶ 37 Appellant extrapolates the certainty of the taint from the fact that the jury's deliberations lasted only two hours; thus, it asserts, the jury must have disregarded its obligation to weigh the evidence and merely assumed the liability of all defendants. As Appellee points out, however, the possibility, indeed, probability, of the decedent's imminent death was made very clear to the jury from the outset; in counsel's opening statement the decedent's absence from the courtroom was explained in terms of his impending demise, and testimony included further information on the same subject. Moreover, the trial court gave curative instructions on three occasions to the effect that the jury were not to allow sympathy to determine the verdict. "Generally, in the absence of extraordinary circumstances, a prompt and effective curative instruction which is directed to the damage done will suffice to cure any prejudice suffered by the complaining party." *Mt. Olivet Tabernacle Church v. Edwin L. Wiegand Division,* 781 A.2d 1263, 1275 (Pa.Super.2001) (internal quotation marks omitted), *aff'd,* 571 Pa. 60, 811 A.2d 565 (2002). Moreover, "juries are presumed to heed a court's curative instructions." *Id.* We find no abuse of discretion in the trial court's denial of Appellant's motion for mistrial. Accordingly, we affirm as to Appellant Surface Combustion, Inc.

¶ 38 Judgments affirmed.