J-S84027-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                         :            PENNSYLVANIA
                           :
           v.                 :
                           :
                           :
MALCOLM WILLIAM             :
                           :
           Appellant        :     No. 2204 EDA 2017

Appeal from the Judgment of Sentence May 23, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000733-2016

BEFORE:  BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                **FILED MAY 09, 2019**

Malcolm William appeals from the judgment of sentence imposed on May 23, 2017, in the Court of Common Pleas of Philadelphia County, following his jury conviction of murder in the third degree, violation of the uniform firearms act (VUFA), and possession of an instrument of crime (PIC).[1]  On appeal, William claims his conviction of murder in the third degree was against the weight and sufficiency of the evidence; he also challenges the trial court's denial of his motion *in limine*.  For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the trial court's April 18, 2018 opinion.

> On December 30, 2015, Hans Fassett ("Hans") and Curt Styles ("Curt") were working at an auto mechanics' garage owned by

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), and 907(a), respectively.

Hans's brother, Seth Fassett ("Seth") on 5915 Girard Avenue when [William] began banging on their office door. Hans stated that [William] was yelling about getting his car looked at by his shop. Curt then popped the hood of [William's] car and Hans went under the hood while [he] continued to yell. [William's] yelling got to the point where Hans told him that he [was] not going to work on his car and suggested that he take his car somewhere else.

When Hans told [William] to take his car somewhere else, [Willam] hit him in the face with a closed fist. Then, [William] and Hans began to fistfight. The next thing Hans heard was Seth yell, "gun, he has a gun." Then Hans, [William], and Seth all fell to the ground, tussling. The tussle continued, and then Hans heard a bang and saw Seth fly backwards. Hans testified that he saw a gun in [William's] hand. Hans turned to his brother and yelled to call 911. When Hans turned around, [William] hopped in his car and drove away. Shortly after, the police arrived and transported Seth to the hospital.

Carlton Keys, also known as "Curt," testified to the events that occurred on December 30, 2015. On that date, Curt was working with Hans at Seth's auto-repair garage. He stated that he saw [William] about two weeks prior to the incident because he was supposed to work on [William's] 2001 Mercury Villager. Curt testified that [William] was supposed to pick up parts and bring the car back to him so he could work on his car. On December 30, 2015, he and Hans were in the auto shop when [William] returned. Then, [William] and Hans began arguing outside. Curt then saw Seth show up and at that time, [William] hit Hans in the face with his fist. Then, Hans and Seth began fighting [William]. Curt stated that he began walking away because he did not want any involvement in the fight. As he walked away, Curt heard a gunshot, then ran around the comer. Curt then ran away down Girard Avenue. He then saw [William] driving away down Girard Avenue. Curt stated that he saw the gun on [William's] hip that day. He claimed the gun was a nickel-plated pistol.

[Nicholas Milton, a friend of Seth's also testified at trial. He stated that he and Seth went into the shop together that day. After he entered the shop, he heard Seth say "don't hit my brother," and saw him run towards William. He averred that he saw William take a nickel-plated or dark pistol from his side and shoot Seth.

He also maintained that he heard Seth shout, "he has gun," before William shot him.]

On December 30, 2015, at around 2:00 p.m., Officer Lamar Coles received a radio call of a person with a gun and a report of a shooting. When Officer Coles arrived on location, he observed Seth lying on the ground and bleeding from the face area. He observed another black male on site, later identified as Seth's brother, Hans. Hans told the officer that, "he shot my brother." Hans pointed out 1211 Redfield Street, the house located adjacent to the auto body garage and stated that the gunman lived at that residence. Officer Coles then observed a[ fired firearm cartridge] in the middle of the street in front of the garage and some blood in that area.

Dr. Albert Chu testified as an expert in forensic pathology. He testified that Dr. Bruce Wayner conducted the autopsy of Seth, however, Dr. Wayner is no longer with the medical examiner's office. Dr. Chu reviewed Dr. Wayner's autopsy report and testified to his findings. Seth was pronounced dead at 2:28 p.m. on December 30, 2015. Seth sustained two gunshot wounds, one that entered the right side of his chest[,] which went through his aorta and his left lung. The other gunshot went through Seth's right hand.

[William] testified to the events on the day in question. On December 30, 2015, [he] lived at 1211 North Redfield Street with his wife and four children. Three days prior to the shooting, [William] asked Curt for inspection stickers because his car is from New Jersey and he did not have anything on his car. Curt told him that they do not just provide inspection stickers, but he offered to look at the car instead. On the morning of the incident, [William] went outside to smoke a cigarette on his porch. Curt approached [William] and asked him if Hans had looked at the car yet and [William] responded that he did not. Curt then offered to look at the car. Curt looked at the car and told [William] that his car needed a belt, a tensioner and that his radiator was leaking. Curt did not know the cost for the radiator but for the belt and the tensioner he wanted $110 for the parts and $70 for the labor. [William] said he could get the belt himself for a cheaper price.

At around 1:30 p.m. on the day in question, [William] was loading up his car to get ready to go to work. At this time, Hans saw [William] and asked him if he had his car looked at yet. [William]

said that Curt looked at it but that, "he was trying to get him." Hans told him not to worry about it and that he would take a look at his car. Hans used his diagnostic tool and asked [William] if he wanted him to do anything else to his car. [William] told him not to worry about it because, "[Curt] was trying to get me." [William] testified that Hans became really angry and then he and Hans got into a short argument. Then, Seth approached from behind [William] and said something to the effect of, "what is going on?" [William] then turned to put the hood down on his car and Hans punched him in the back of the head. Then [William] and Hans began to fight. Seth then jumped in the fight. [William] stated that during the fight someone said, "gun." [William] then tried to get away from the fight. [William] then saw the gun on Seth so then he began wrestling Seth. He said that the gun was small and black. While they were tussling, [William] heard a shot go off and he got up, jumped into his car and drove away. [William] testified that he did not bring a gun.

[William] did not drive to the police station to report the shooting. Instead, [William] drove to North Philadelphia up 59th Street and rode through the park. [William] stayed at the bottom of the park in a parking lot to, "get his thoughts together." [William] was aware that police subsequently searched his home and issued a warrant for his arrest. [William] contacted his attorney and turned himself in on January 6, 2016.

\* \* \* \*

[William's] story directly contradicts Han[s'] and Curt's stor[ies].

[In October 2016, the trial court] held a hearing to hear [William's] motion *in limine* to exclude evidence of Seth's statement on the day in question. [William] sought to exclude the statement where Seth yelled, "gun" when Hans and [William] were fighting. [William] contends that this statement should be excluded as inadmissible hearsay. [The trial court] denied [William's] motion and allowed the statement in as it fell under both the present sense impression and excited utterance exceptions to the rule against hearsay.

Trial Court Opinion, 4/18/2018, at 2-6 (footnote and record citations omitted).

The jury found William guilty of the aforementioned charges. On May 23, 2017, the trial court sentenced William to an aggregate term of 24 to 50 years' imprisonment. On May 26, 2017, William filed a post-sentence motion challenging the weight and sufficiency of the evidence. The trial court denied the motion on June 15, 2017. The instant, timely appeal followed.[2]

In his first issue, William argues that the evidence is insufficient to sustain his conviction of murder in the third degree.[3] William's Brief, at 3. Specifically, William claims that the Commonwealth did not prove that he was the shooter and did not prove that he acted with malice. *Id.* at 8. We disagree. Our standard of review for a claim of insufficient evidence is as follows:

> The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. In assessing [a] sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

---

[2] On July 30, 2017, in response to the trial court's order, William filed a concise statement of errors complained of on appeal. On April 18, 2018, the trial court issued an opinion.

[3] William does not challenge the sufficiency of the evidence underlying his conviction of VUFA and PIC.

***Commonwealth v. Edwards***, 177 A.3d 963, 969-970 (Pa. Super. 2018)

(quotation marks and citations omitted).

> Regarding third degree murder . . . the statute simply states, "All other kinds of murder shall be murder of the third degree." [18 Pa.C.S.A.] § 2502(c). Importantly, § 2502(c) does not set forth the requisite *mens rea* for third degree murder; however, § 302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts **intentionally**, **knowingly** or **recklessly** with respect thereto." ***Id.***, § 302(c) (emphasis added).
>
> Case law has further defined the elements of third degree murder, holding:
>
>> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.
>
> This Court has further noted:
>
>> [T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa. 2013) (some citations omitted), *cert. denied*, 572 U.S. 1125 (2014).

Turning to the present matter, the trial court found the following:

. . .Where the victim had been shot through the heart and lung, the use of a deadly weapon upon a vital part of the body was sufficient to permit an inference of malice necessary for murder in the third degree. **Commonwealth v. Kennerly**, 410 A.2d 319, 321 (Pa. Super. 1979).

The Superior Court in **Kennerly** determined that there was sufficient evidence to convict the defendant of third-degree murder. **Id.** at 320. The defendant in **Kennerly** was engaged in a heated argument with the victim before they began to exchange fists. **Id.** Shortly after, nearby police officers heard a gunshot and then witnessed the victim stumble to the ground. **Id.** The victim died as a result of the gunshot wound which penetrated his heart and lung. **Id.** The Superior Court reasoned that the third-degree murder conviction was sufficient because the victim had been shot through the heart and lung. **Id.** The **Kennerly** court cited that the use of a deadly weapon on the vital part of the body was sufficient for an inference of malice necessary for third-degree murder. **Id.** at 321.

Similarly, the Superior Court in **Commonwealth v. Mercado**, 649 A.2d 946, 957 (Pa. Super. 1994) found sufficient evidence to convict the defendant of third-degree murder. The court in **Mercado** hinged its decision on the use of a deadly weapon on the vital part of the victim's body, the chest, in finding the third-degree murder conviction sufficient. **Id.** In **Mercado**, an eyewitness testified that the defendant shot the victim during an argument. **Id.** The **Mercado** court explained that this evidence supported a finding that the defendant acted with malice sufficient to support a conviction for third degree murder. **Id.**

First and foremost, contrary to [William's] contention, [the] Commonwealth did prove, through witness testimony, that [he] brought the gun on the day in question. The Commonwealth provided statements from three separate individuals who attested to [William's] possession of a firearm on that day. Testimonial evidence from Curt[,] Hans[, and Milton] provided that [William] possessed a gun. Curt stated that he saw the gun on [William's] hip. [Hans] saw the gun in [William's] hand right before the fatal shots. Additionally, the Commonwealth introduced a statement from Seth, who yelled that [William] had a gun during their fight. This evidence is sufficient to show that [William] brought the gun.

- 7 -

Like the defendants in **Kennerly** and **Mercado**, [William] argues that there was not sufficient evidence to convict him of third-degree murder, as there was no malice. However, similar to the victims in both **Kennerly** and **Mercado**, Seth sustained a gunshot wound to his chest, a vital part of his body. The bullet entered Seth's chest and subsequently travelled through his aorta and his left lung. [William] used a deadly weapon on a vital part of Seth's body. Although there was some discrepancy about how exactly the gun fired, witness testimony provided that [William] fired the fatal shots. Specifically, Hans testified that he heard a bang as he[,] Seth and [William] were "tussling," and then saw Seth fly backwards. With this, at the very least, the jury was proper in drawing an inference in determining that [William] pulled the trigger. As guided by the Superior Court in **Kennerly** and **Mercado**, the evidence of his possession of the gun and subsequent discharge of that gun at a vital part of Seth's body, his chest, supported finding that [William] acted with malice sufficient to convict him of third-degree murder.

Trial Court Opinion, 4/18/2018, at 8-9 (record citations omitted).

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as the verdict winner, we agree with the trial court's conclusion that there was sufficient evidence presented to the jury to support a conviction of third-degree murder. Accordingly, his sufficiency argument fails.

In his second issue, William contends that the verdict was against the weight of the evidence.[4] William's Brief, at 3. A weight of the evidence claim concedes the sufficiency of the evidence. **Commonwealth v. Widmer**, 744

---

[4] William preserved his weight of the evidence claim by filing a post-sentence motion. [William's] Post-Sentence Motions, 5/26/2017, at unnumbered pages 1-2.

- 8 -

A.2d 745, 751 (Pa. 2000). A weight claim addresses the discretion of the trial court. *Id.* at 752 (citation omitted). On review, the appellate court decides whether the trial court abused its discretion when ruling on the weight claim; it does not consider the underlying question of whether the verdict was against the weight of the evidence. *Id.* at 753. We will only find an abuse of discretion where the verdict is so contrary to the evidence as to shock one's sense of justice. Our review of a challenge to the weight of the evidence supporting the verdict is settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Rosser*, 135 A.3d 1077, 1090 (Pa. Super. 2016) (*en banc*) (citation omitted), *appeal denied*, 168 A.3d 1237 (Pa. 2017).

William's weight of the evidence claim is merely a restatement of his sufficiency challenge, which we discuss *supra*. He views the evidence in the light most favorable to himself, and does not explain how the trial court

abused its discretion in denying his weight claim. Rather, his two-paragraph argument consists only of his bald allegation that the verdict must be against the weight of the evidence because "no one saw the shooting!" William's Brief, at 13. He also complains of the lack of forensic evidence. *Id.* Conversely, the trial court, in its opinion, discusses, in detail, why it did not find that the verdict was against the weight of the evidence. Trial Court Opinion, 4/18/2018, at 10-11. William provides us with no basis upon which to disagree. Accordingly, his weight claim fails.

In his third and final issue, William claims that the trial court erred in denying his motion *in limine* to preclude admission at trial of Seth's statement that William had a gun. William's Brief, at 14-21. William also argues that the statement's admission violated his rights under the Confrontation Clause. The trial court found the statement was admissible under both the excited utterance and present sense impression exceptions to the hearsay rule. Trial Court Opinion, 4/18/2018, at 11-13.

Our review of a trial court's ruling on a motion *in limine* is well established:

> When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa. Super. 2014) (quotation marks and citations omitted).

We first address William's claim that Seth's statement does not qualify under either the "excited utterance" or present sense impression exceptions to the hearsay rule. For the reasons discussed below, we find that William has waived this claim.

In his brief, William does not explain why Seth's statement is neither an excited utterance nor a present sense impression. William's Brief, at 16-18. Instead, he argues, confusingly, that what "is really at issue" is Hans' statement to the police. *Id.* at 16. However, the record does not support this claim; Hans never testified that he told the police that he heard his brother say William had a gun. His testimony was that he **heard** Seth say during the altercation that William had a gun. N.T. Trial, 11/29/2016, at 87. More importantly, William waived any such claim because he did not argue this theory in either his motion *in limine* or his post-sentence motion and we have long held that an appellant cannot raise a new theory on appeal. *Commonwealth v. Goolson*, 189 A.3d 994, 1000 (Pa. Super. 2018) (citations omitted).[5] Thus, the claim must fail.

_____

[5] In any event, the claim lacks merit. Our Rules of Evidence define an excited utterance as:

> [a] statement relating to a startling event or condition made while the declarant was under the stress of excitement that it caused.

- 11 -

Alternatively, William argues that, even if the statement at issue was admissible under the excited utterance or present sense impression exceptions to the hearsay rule, Seth's statement was testimonial hearsay, and, therefore, was improperly admitted into evidence in violation of the Confrontation Clause and Due Process standard as established in *Crawford v. Washington*, 541 U.S. 36 (2004). William's Brief at 14. No relief is due.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted

---

Pa.R.E. 803(2). As is known, excited utterances fall under the common law concept of *res gestae*. *Commonwealth v. Pronkoskie*, 383 A.2d 858, 860 (Pa. 1978). *Res gestae* statements, such as excited utterances, present sense impressions, and expressions of present bodily conditions are normally excepted out of the hearsay rule, because the reliability of such statements are established by the statement being made contemporaneous with a provoking event. *Id.*

The present sense impression exception provides that a hearsay statement is admissible if it is "describing or explaining an event or condition, made while or immediately after the declarant perceived it." Pa.R.E. 803(1). "The exception allows testimony concerning events observed by the declarant regardless of whether or not the declarant was excited. The statement must be made at the time of the event or so shortly thereafter that the declarant would be unlikely to have the opportunity to decide to make a false statement." *Bugosh v. Allen Refractories Co.*, 932 A.2d 901, 914 (Pa. Super. 2007), *appeal dismissed*, 971 A.2d 1228 (Pa. 2009).

Here, we agree with the trial court that Seth's statement that William had a gun made contemporaneously with the altercation and only a few moments before he was shot qualifies under both exceptions. *See* Trial Court Opinion, 4/18/2018, at 12-13.

with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant [ ] had a prior opportunity for cross-examination." **Crawford**, 541 U.S. 36, 53–54.

The United States Supreme Court has described the distinction between "testimonial" statements and "nontestimonial" statements as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

**Davis v. Washington**, 547 U.S. 813, 822 (2006) (footnote omitted).[6]

As previously discussed, the totality of the circumstances demonstrates that Seth's statement reflects his immediate reaction to seeing William with a gun during the altercation. Both Hans and Milton overheard Seth's spontaneous statement. As such, the statement was not testimonial.

---

[6] We note that, while the above-quoted language refers to statements that are the product of police interrogation, the Confrontation Clause applies regardless of whether the statements at issue resulted from an interrogation or not. **Davis v. Washington**, 547 U.S. at 822 n. 1 ("This is not to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial. The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation.").

Accordingly, the Confrontation Clause does not bar the admission of this evidence at trial.

For all the foregoing reasons, we affirm William's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/19