**John Andrew GREGG, Exec. of the Estate of John I. Gregg, Jr., Deceased, Appellant**

v.

**V–J AUTO PARTS COMPANY.**

Superior Court of Pennsylvania.

Argued Aug. 19, 2008.

Filed June 11, 2009.

Richard P. Myers, Philadelphia, for appellant.

Robert P. Corbin, Philadelphia, for appellee.

BEFORE: STEVENS, MUSMANNO, and BENDER, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal on remand from the Supreme Court of Pennsylvania, *Gregg v. V-J Auto Parts Company*, 596 Pa. 274, 943 A.2d 216 (2007), to determine, whether in light of the frequency, regularity and proximity of the decedent's, John I. Gregg, Jr.'s, exposure to asbestos products sold

by Appellant, V–J Auto Parts Company, the trial court correctly determined summary judgment was warranted. Additionally, this Court is called upon to determine whether Appellee, John Andrew Gregg, the executor of John I. Gregg's estate, should be permitted to amend the complaint to conform to the evidence. We find that the trial court correctly determined that summary judgment is warranted under the circumstances in this case. Accordingly, we affirm the decision of the trial court and deny the motion to amend the complaint.

¶ 2 The Supreme Court aptly summarized the facts and procedural history of this case as follows:

John I. Gregg, Jr. ("Mr. Gregg") died in March 1998. A year later, his son, Appellee John Andrew Gregg, as executor for his father's estate, filed a product liability complaint naming more than seventy defendants and alleging civil liability on their part for Mr. Gregg's death due to his exposure to asbestos-containing products and resultant pleural mesothelioma, a cancer of the lining of the lungs. Appellee averred that Mr. Gregg was exposed to asbestos throughout a forty-year history of employment with telecommunications companies as a cable splicer and line man; over a four-year period in which he worked as a gas station attendant; and during a three-year period while serving in the United States Navy. The complaint also alleged that, throughout his lifetime, Mr. Gregg installed and removed brake linings and clutches on cars and trucks, and that he was exposed to asbestos in these activities as well. By virtue of this last set of averments, Appellee included as defendants Allied–Signal, Inc., a successor corporation to Bendix Corporation, which manufactured brake products in the relevant time frame, and

Appellant, V–J Auto Parts Company, a supplier of automobile parts.

Despite the assertions in the complaint concerning occupational exposure to asbestos, according to Appellee, he was unable to adduce any evidence to support them. Consequently, the action was settled and/or dismissed with regard to all defendants other than Appellant, and the litigation efforts focused on Mr. Gregg's personal automotive maintenance activities.

After the deadline for discovery passed, Appellant filed a motion for summary judgment, asserting that Appellee could not prove that Mr. Gregg was exposed to an asbestos-containing product purchased at Appellant's store with sufficient frequency and regularity to meet the test set forth in *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50 (1988) ("Whether a plaintiff could successfully get to the jury or defeat a motion for summary judgment by showing circumstantial evidence depends upon the frequency of the use of the product and the regularity of plaintiff's employment in proximity thereto."). According to the motion, Appellee could at best demonstrate that Mr. Gregg used brake products purchased from Appellant's store on two or three occasions throughout his entire lifetime; Appellee could not establish that any products purchased by Mr. Gregg from Appellant's store contained asbestos; and Appellee's own expert witness, pathologist Harvey B. Spector, M.D., attributed Mr. Gregg's disease solely to an "occupational history of exposure to asbestos," and not to non-occupational exposure such as Mr. Gregg's automobile maintenance activities.

In response, Appellee argued that his deposition testimony, and that of his sister and a neighbor of the Gregg household in the 1960 to 1965 timeframe, suffi-

ciently established Mr. Gregg's exposure to asbestos-containing brake products sold by Appellant. Further, Appellee furnished a modified version of Dr. Spector's report, in which the pathologist revised his opinion to attribute Mr. Gregg's disease to "occupational and non-occupational" asbestos exposures, indicating that the change resulted from his review of the depositions of the product identification witnesses. Appellee also submitted documents attributable to Allied Signal, Inc. and Raybestos–Manhatten, Inc., supporting the claim that the brake products manufactured by these companies (or their predecessors) in the 1950s and 1960s time frame contained asbestos. Further, Appellee relied on expert affidavits of a chemist, an occupational disease physician, and an epidemiologist to establish that mesothelioma may be caused by even a small exposure to asbestos.

Upon receiving the Appellee's response and the supplemental report, Appellant filed a motion to strike the supplemental report and to preclude Appellee from relying upon it at trial. Appellant argued that the supplemental report was untimely, in that it was not produced until after the deadline for expert reports had passed, and that the report was prejudicial, since the case was scheduled to go to trial in two weeks.

The common pleas court (per Judge Tereshko) granted summary judgment in Appellant's favor, on the ground that Appellee's product identification testimony was inadequate. *See Gregg v. V–J Auto Parts*, No. 003888 March Term 1999, *slip op.*, 2001 WL 35923757 (Nov. 6, 2001). Initially, the court accepted Appellant's argument that the frequency, regularity, proximity analysis discussed in *Eckenrod* should apply. *See id.* at 3 ("The courts in Pennsylvania

have been consistent in requiring the plaintiff to produce evidence that he frequently and regularly used, or worked in sufficient proximity to, a specific defendant's asbestos-containing product, and that he inhaled asbestos fibers shed therefrom in order to overcome a motion for summary judgment."). The common pleas court recognized that there was sufficient evidence that Mr. Gregg was exposed to asbestos at some point during his lifetime, and that this exposure caused his illness, but it found insufficient evidence linking the exposure to either Allied Signal, Inc. or Appellant to create a triable issue. In this regard, the court observed that the product identification witnesses were unable to confirm that Mr. Gregg specifically used brakes manufactured by Bendix Corporation and sold by Appellant, or more broadly, that Bendix Corporation manufactured, and Appellant distributed, the asbestos-containing product that was the cause of Mr. Gregg's disease. The court's opinion elaborated fairly extensively concerning the vagueness of the recollections of the product identification witnesses concerning circumstances and events from thirty-five to forty years earlier. *See id.* at 3–5.

Appellee appealed to the Superior Court, and a three-judge panel vacated the common pleas court's order and remanded in an unpublished opinion. *See Gregg v. A.P. Green Industries, Inc.*, 813 A.2d 912 (Pa.Super.2002). The panel concluded that the common pleas court erred because, regardless of whether there was sufficient evidence to identify a particular manufacturer, there was enough evidence to show brake products containing asbestos were purchased from Appellant's store. The Superior Court panel indicated, however, that it was unclear whether Appellee

could present sufficient evidence to show that the amount of Mr. Gregg's exposure to asbestos in the relatively few times that he was shown to have changed asbestos-containing brakes, as compared to the forty-plus years of occupational exposure to asbestos containing products asserted in the complaint, was a substantial contributing factor to his disease. *See id.* at 913. Thus, the court remanded for such a determination.

On remand, the common pleas court (per Judge Ackerman) again found the record insufficient to meet the requirements of the frequency, regularity, and proximity analysis. *Gregg v. V–J Auto Parts, Inc.,* No. 003888 March Term 1999, *slip op.* (C.P.Phila.Dec. 2, 2003). The court highlighted that Appellee did not remember specific parts purchased from Appellant's store; Appellee's sister had no knowledge concerning whether products purchased from Appellant's store contained asbestos; and the household neighbor assumed that brake products purchased from Appellant's store contained asbestos and could only recall two or three times in which he saw Mr. Gregg installing brake products purchased from Appellant. The common pleas court explained:

> This court is mindful that there is no requirement that plaintiff must prove how many asbestos fibers one must inhale necessary to a determination of causation; however, evidence of exposure must demonstrate that the plaintiff worked, on a regular basis, in physical proximity with the product and that his contact with same was of such nature as to raise a reasonable inference that he inhaled asbestos fibers that emanated from it. *See Junge v. Garlock,* 427 Pa.Super. 592, 629 A.2d 1027 (1993); *Samarin v. GAF Corp.,* 391 Pa.Super. 340, 571 A.2d 398 (1989); *Eckenrod.* The fact

that plaintiff's supplemental medical expert opined that Mr. Gregg's occupational exposure and his non-occupational exposure from performing brake jobs both contributed to his mesothelioma, this is non determinative since our case law requires the plaintiff to produce sufficient evidence of regular and frequent exposure to asbestos products supplied by the defendant. It is acknowledged that decedent was exposed to asbestos sometime during his lifetime, and that exposure caused his illness, but there is insufficient evidence that links his asbestos exposure to the defendant in this matter.

*Id.* at 5. Finally, the court relied on *Wilson v. A.P. Green Industries, Inc.,* 2002 PA Super 294, 807 A.2d 922 (Pa.Super.2002), as rejecting the argument that the frequency, regularity and proximity test should not apply in mesothelioma cases. *See id.* at 4–5 (quoting *Wilson,* 807 A.2d at 925).

On further appeal, initially, a different Superior Court panel affirmed, finding that the common pleas court correctly determined that Appellee's product identification evidence was insufficient to create a jury issue. *See Gregg v. V–J Auto Parts Co.,* No. 3528 EDA 2003, 2004 Pa.Super. LEXIS 2347, *slip op.* (Pa.Super. Jul.22, 2004). On Appellee's motion for reconsideration, however, the panel withdrew its initial opinion, and, in a subsequent one, it reversed the common pleas court's summary judgment order. *See Gregg v. V–J Auto Parts Co.,* 876 A.2d 474 (Pa.Super.2005). The panel reasoned that the case could not be disposed on the issue of product identification, since that issue had been addressed and resolved in Appellee's favor by a prior Superior Court panel decision. *See id.* at 475 (citing *Gregg v. A.P.*

*Green Industries, Inc.,* 813 A.2d 912 (Pa.Super.2002) ("there *was* sufficient evidence to show brake linings containing asbestos were *purchased* from V–J" (emphasis in original))). In terms of the application of the frequency, regularity, proximity criteria, the court drew a distinction between cases in which there is direct evidence of exposure and those in which the evidence of exposure is circumstantial. Relying on *Gilbert v. Monsey Products, Co.,* 2004 PA Super 380, 861 A.2d 275 (Pa.Super.2004), the panel concluded that the frequency, regularity, proximity analysis was inapplicable where there is direct evidence that a plaintiff (or his decedent) inhaled asbestos fibers deriving from a defendant's product. *See Gregg,* No. 3528 EDA 2003, 2004 Pa.Super. LEXIS 2347, *slip op.* at 11. Thus, the panel determined, essentially, that direct testimony concerning exposure to a defendant's asbestos-containing product will always raise material questions of fact concerning causation that can be resolved only by the fact finder. *See id.* at 277 (citing *Gilbert,* 861 A.2d at 276–77 ("The question as to whether there was sufficient regularity and frequency so as to cause [the a]ppellant's injury [in a direct evidence case] is a question for the jury.")). As direct evidence, the panel referenced the testimony of the Gregg household neighbor as "mak[ing] clear that both the removal of worn brakes and the installation of new brakes, both of which the decedent purchased from V–J, created airborne dust." *See Gregg,* No. 3528 EDA 2003, 2004 Pa.Super. LEXIS 2347, *slip op.* at 13. Further, the panel distinguished *Eckenrod,* as representing a case in which the plaintiff relied entirely on evidence of workplace circumstances to establish exposure inferentially. *See* 2004 Pa.Super. LEXIS 2347, [slip op.] at 12.

Judge Bowes dissented, expressing her disagreement with the majority's reasoning and with *Gilbert.* According to Judge Bowes, the frequency, regularity, proximity test is appropriately applied by courts at the dispositive motions stage, regardless of whether the evidence of exposure is direct or circumstantial in character. She highlighted *Eckenrod's* reaffirmance that, in order to survive a motion for summary judgment, every plaintiff, whether relying on direct or circumstantial evidence, must point to "sufficient material facts in the record to indicate that there is a genuine issue of material fact as to the causation of [the plaintiff's or the] decedent's disease" by the defendant's product. *Gregg,* No. 3528 EDA 2003, 2004 Pa.Super. LEXIS 2347, *slip op.* at 4 (Bowes, J., dissenting) (quoting *Eckenrod,* 375 Pa.Super. at 192, 544 A.2d at 53). Judge Bowes took the position that a subsequent reference in *Eckenrod,* which indicated that plaintiffs who rely solely on circumstantial evidence must show frequent use and regular proximity to the product, was explanatory in nature and should not be construed as relieving plaintiffs who offer direct evidence of the same burden. *See* 2004 Pa.Super. LEXIS 2347, [slip op.] at 4–5 (citing *Eckenrod,* 375 Pa.Super. at 192, 544 A.2d at 53). Indeed, the dissent noted that the Superior Court had, on multiple occasions applied the frequency, regularity, proximity criteria in cases in which plaintiffs personally described their exposure to specific asbestos-containing products. *See* 2004 Pa.Super. LEXIS 2347, [slip op.] at 5 (citing *Lonasco v. A–Best Products Co.,* 2000 PA Super 203, 757 A.2d 367, 376 (Pa.Super.2000), and *Coward v. Owens–Corning Fiberglas Corp.,* 1999 PA Super 82, 729 A.2d 614, 623 (Pa.Super.1999)).

Like the common pleas court, Judge Bowes observed that the much of the testimony proffered by Appellee pertaining to frequency, regularity, and proximity was vague and generalized. Viewing the evidence in the light most favorable to Appellee, Judge Bowes found the deposition testimony indicated that Mr. Gregg installed asbestos-containing brakes purchased from Appellant's store on three occasions over a five-year period, and that he was exposed to airborne fibers for less than thirty minutes each time that he installed new brake shoes. Judge Bowes agreed with the common pleas court that this evidence did not meet the frequency, regularity, proximity test.

On Appellant's petition for allowance of appeal, this Court granted further review, limited to the following issue:

> In a products liability suit brought against the manufacturer or supplier of a product containing asbestos, to survive summary judgment must the plaintiff show frequent use of, and regular close proximity to, the product, even if the plaintiff presents direct evidence of inhalation?

*Gregg v. V–J Auto Parts Company,* 943 A.2d at 217–221 (footnotes omitted).

¶ 3 In their opinion, the Supreme Court held that it is appropriate for courts, at the summary judgment stage, to make an assessment whether, in light of the facts presented, concerning the frequency, regularity, and proximity of decedent's exposure, a jury would be entitled to make the necessary inference of a causal connection between the defendant's product and the asserted injury. *Id.* at 227. Accordingly, the Supreme Court remanded for this Court to apply the test espoused in *Tragarz v. Keene Corp.,* 980 F.2d 411 (7th Cir.1992), to determine if the trial court erred in awarding summary judgment.

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

As already noted, on appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. *Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration.*

*Cresswell v. Pennsylvania National Mutual Casualty Insurance Co.,* 820 A.2d 172, 177 (Pa.Super.2003) (citation omitted and emphasis in original).

¶ 4 The Supreme Court found that *Tragarz, supra* provides the proper standard in which to evaluate the application of the frequency, regularity, and proximity factors in asbestos litigation. Notably, the Supreme Court stated:

> [The factors should be] applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which likelihood is absent on account of only casual or minimal exposure to the defendant's product. Further, *Tragarz* suggests that the application of the test should be tailored to the facts and circumstances of the case, such that, for example, it's application should become "somewhat less critical" where the plaintiff puts forth specific evidence of exposure to a defendant's product. Similarly, under *Tragarz,* the frequency and regularity prongs become "somewhat less cumbersome" in cases involving diseases that the plaintiff's competent medical evidence indicates can develop after only minor exposures to asbestos fibers.

> . . .

> [The Supreme Court recognized] that it is common for plaintiffs to submit expert affidavits attesting that any exposure to asbestos, no matter how minimal, is a substantial contributing factor in asbestos disease. However, [the Supreme Court] share[d] Judge Klein's perspective, [ ] that such generalized opinions do not suffice to create a jury question in a case where exposure to the defendant's product is *de mimimus,* particularly in the absence of evidence excluding other possible sources or exposure (or in the fact of evidence of substantial exposure from other sources).

> As Judge Klein explained, one of the difficulties courts face in the mass tort cases arises on account of a willingness on the part of some experts to offer opinions that are not fairly grounded in a reasonable belief concerning the underlying facts and/or opinions that are not couched within accepted scientific methodology. [The Supreme Court in discussing the facts of this case stated that:] [i]t is worth noting that this phenomenon undisputedly occurred in this case with respect to the defendants sued under an occupational exposure theory. In this regard, Appellee's primary liability expert, Dr. Spector, initially asserted in his report that, based on a review of Mr. Gregg's history, there was an "occupational history of exposure to asbestos" that was the cause of his mesothelioma. Appellee's brief, on the other hand, relates that, in fact, there is no available evidence of any occupational exposure[,] which is why the liability case has now centered on Appellant.

*Gregg v. V–J Auto Parts Company,* 943 A.2d at 225–226 (internal citations and footnotes omitted) (quotations original).

¶ 5 Caroline Morici, decedent's daughter, was deposed and testified that she had no personal knowledge of whether her father worked with asbestos-related products at his job as a cable-splicer for Bell of Pennsylvania. Deposition of Carolyn Morici 6/11/01 at 24. She testified that her father sometimes worked on brakes. *Id.* at 39. While she knew her father purchased products from Appellant's company, she was unaware of whether these products contained asbestos. *Id.* at 36. She did not recall the particular products she bought or how many times she made the purchases. *Id.* at 75–81.

¶ 6 John Andrew Gregg, decedent's son and Appellee, was deposed and testified

that his father worked on automobiles during Appellee's youth. Deposition of John Andrew Gregg 6/6/01 at 36. Although he does not know for certain that the particular brakes used by his father contained asbestos, he testified that as an adult he learned that all brakes manufactured during that time period did contain asbestos. *Id.* at 36, 98. He had no recollection of the manufacturers of the brakes used by his father. *Id.* at 66, 81, 88. Furthermore, he did not recall what specific parts his father purchased from Appellant. *Id.* at 88. Significantly, he did recall that his father purchased brakes from another store besides that of Appellant's. *Id.* at 96. He indicated that he had no knowledge of whether his father came in contact with asbestos at his job at Bell of Pennsylvania but noted that he felt that it was probable. *Id.* at 112.

¶ 7 Charles F. Schaefer was deposed and testified that he worked with the decedent at Bell of Pennsylvania. Deposition of Charles F. Schaefer 8/6/01 at 13. He was unaware of whether decedent worked with products that contained asbestos at his job. *Id.* at 14, 16. He helped the decedent on occasion with installing brakes but could not recall the number of times or the products used. *Id.* at 24–27, 29. Schaefer testified that the decedent often went to Appellant's store to purchase parts. *Id.* at 29–30. Although he assumed the brake parts contained asbestos, he did not know for certain. *Id.* at 31. He did not recall going to other stores to purchase brakes. *Id.* at 32, 59.

¶ 8 Applying the test set forth in *Tragarz, supra,* and considering the evidence in the light most favorable to the non-moving party, there is simply no evidence to support the conclusion that the decedent had more than *de minimis* contact with Appellant's products. The type of product bought and the type of product used by decedent that was purchased at Appellant's store, was generally unknown. There is no evidence at all to support the conclusion that the decedent had definite contact with Appellant's products, which contained asbestos. Even the expert reports did not create a jury question, as detailed by the Supreme Court, as they contained no evidence to support Appellee's claim of decedent's exposure; rather, the reports substantiated that decedent died from asbestos exposure which may or may not have been due to his occupation. Certainly, these reports did not link Appellant to the cause of the asbestos exposure. Under these circumstances, we must find the trial court properly awarded summary judgment in Appellant's favor. *See Tarzia v. American Standard,* 952 A.2d 1170 (Pa.Super.2008) (affirming award of summary judgment where nothing in record showed what company manufactured brake shoes plaintiff came in contact with or that those parts even contained asbestos). Finding no basis upon which to disturb the findings of the trial court, we affirm.

¶ 9 Order **AFFIRMED.** Motion to amend the complaint **DENIED.**