J-S23016-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHARON GILBERT, EXECUTIVE FOR THE ESTATE OF GUY GILBERT AND SHARON GILBERT IN HER OWN RIGHT, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 3228 EDA 2017 |
| | : | |
| ADVANCE AUTO PARTS A/K/A ADVANCE STORES CO., INC., AUTOMOTIVE DISTRIBUTION NETWORK, LLC, AND FORD MOTOR COMPANY | : | |

Appeal from the Order Entered August 29, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 2458 November Term, 2015

| | | |
|---|---|---|
| SHARON GILBERT, EXECUTIVE FOR THE ESTATE OF GUY GILBERT AND SHARON GILBERT IN HER OWN RIGHT, HIS WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | No. 3231 EDA 2017 |
| | : | |
| ADVANCE AUTO PARTS A/K/A ADVANCE STORES CO., INC., AUTOMOTIVE DISTRIBUTION NETWORK, LLC, AND FORD MOTOR COMPANY | : | |

Appeal from the Order Entered August 29, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 2458 November Term, 2015

J-S23016-18

| | | |
|---|---|---|
| SHARON GILBERT, EXECUTIVE FOR THE ESTATE OF GUY GILBERT AND SHARON GILBERT IN HER OWN RIGHT, HIS WIFE | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 3233 EDA 2017 |
| ADVANCE AUTO PARTS A/K/A ADVANCE STORES CO., INC., AUTOMOTIVE DISTRIBUTION NETWORK, LLC, AND FORD MOTOR COMPANY | : : : : : : | |

Appeal from the Order Entered August 29, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  2458 November Term,  2015

BEFORE:   SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JULY 23, 2018**

Appellant Sharon Gilbert, as the executive of the estate of Guy Gilbert (Decedent) and in her own right as Decedent's wife, appeals from the orders granting summary judgment in favor of Appellees Advance Auto Parts, A/K/A Advance Stores Co., Inc. (Advance), Automotive Distribution Network, LLC (Automotive), and Ford Motor Company (Ford).[1]  Appellant claims that she adduced adequate evidence establishing that that Decedent was exposed to Appellees' asbestos-containing products.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] This Court consolidated these appeals *sua sponte* on October 27, 2017.

- 2 -

We summarize the relevant allegations in Appellant's second amended short-form complaint.[2]  Between 1975 and 1985, Decedent worked as an auto mechanic at Alray Tire (Alray) in Pittsburgh, Pennsylvania.  During that time, Decedent worked on brakes and brake linings and was exposed to dust containing asbestos.  On September 1, 2015, Decedent was diagnosed with mesothelioma.[3]  Decedent died on November 23, 2015.

Decedent was not deposed before his passing.  During discovery, Appellant deposed E. Wayne Felgar and John L. Price, Decedent's manager and coworker at Alray, respectively, and obtained expert reports.

Appellees filed motions for summary judgment on June 20, 2017.  Appellant filed responses, and Appellees filed replies.  On August 29, 2017, the trial court entered the instant orders granting summary judgment in favor of Advance, Automotive, and Ford.[4]  Appellant subsequently settled the case as to all non-bankrupt parties without prejudice, and the case against the Manville Fund was dismissed without prejudice to reopening the matter in arbitration.  ***See*** Trial Work Sheet, 9/7/17.

---

[2] The parties utilized the pleadings and motions practices in the Philadelphia Court of Common Pleas for asbestos cases.  Appellant filed her second amended complaint on September 28, 2016.

[3] "Mesothelioma is a malignancy involving the covering of the lung or the lining of the pleural and abdominal cavities; it is a rare disease associated with exposure to asbestos."  ***Linster v. Allied Signal, Inc.*** 21 A.3d 220 (Pa. Super. 2011).

[4] We discuss the details of Appellees' motions for summary judgment, Appellant's responses, Appellees' replies, and the trial court's ruling below.

Appellant timely appealed. The trial court did not require the submission of a Pa.R.A.P. 1925(b) statement, but filed an opinion suggesting that Appellant failed to demonstrate exposure to any product sold, manufactured, or distributed by Appellees.

Appellant presents the following question for review:

> When the evidence is reviewed in a light most favorable to the [Appellant], does it appear more likely than not that [Decedent] was exposed to asbestos-containing Ford products, and asbestos-containing products supplied by Advance . . . and Automotive . . . and then developed mesothelioma?

Appellant's Brief at 1-2.

Appellant claims that the trial court erred in failing to review the record in a light most favorable to her as the non-moving party. Appellant notes:

> Multiple people testified [Decedent] worked on Ford vehicles throughout his time at Alray Tire, and believed the brakes he changed contained asbestos. Multiple people testified asbestos-containing products were purchased from stores owned by Advance Auto and Automotive Distribution Network. Ford and other defendants confirmed brakes on Ford vehicles contained asbestos. Multiple people have testified [Decedent] was a mechanic who did maintenance on a litany of vehicles including Fords.

Appellant's Brief at 4. As set forth in greater detail below, Appellant contends that the record contained genuine issues of fact that Appellees manufactured or supplied asbestos brakes to Alray, that Decedent was exposed to Appellees' products, and that those exposures were frequent, regular, and proximate.

The principles governing our review are well settled.

- 4 -

Our standard of review on an appeal from the grant of a motion for summary judgment is well-settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Krauss v. Trane U.S. Inc.***, 104 A.3d 556, 562-63 (Pa. Super. 2014) (some citations omitted).

In an asbestos case,

plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. Additionally, in order for a plaintiff to defeat a motion for summary judgment, a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's product. Therefore, a plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. Summary judgment is proper when the plaintiff has failed to establish that the defendants' products were the cause of plaintiff's injury.

***Id.*** at 563.

Plaintiff bears the burden of identifying a defendant "as a manufacturer or seller of a particular offending product, before . . . injuries may be found to

be proximately caused by some negligence of [the defendant]." ***Cummins v. Firestone Tire & Rubber Co.***, 495 A.2d 963, 967 (Pa. 1985). The failure to identify the offending product is fatal to a plaintiff's claim because without proper product identification, the plaintiff cannot show a defendant manufactured or sold the product. ***Id.*** at 969.

As to product identification,

> The testimony of a witness with knowledge relating to the plaintiff's workplace exposure to an asbestos-containing product is admissible when probative. Even when the plaintiff is not able to identify specific products manufactured by particular defendants, the testimony of co-workers is admissible to establish that the plaintiff worked in close proximity to the asbestos products in question.

***Wright v. Allied Signal, Inc.***, 963 A.2d 511, 515 (Pa. Super. 2008) (citations omitted).

In ***Eckenrod v. GAF Corp.***, 544 A.2d 50 (Pa. Super. 1988), this Court set forth a "frequency, regularity, and proximity" test for causation in asbestos cases. ***Id.*** at 192 (holding that fact that specific asbestos products were in the same facility did not show adequate exposure to those products). The Pennsylvania Supreme Court instructs that the:

> frequency, regularity and proximity factors in asbestos litigation . . . are to be applied in an evaluative fashion as an aid in distinguishing cases in which the plaintiff can adduce evidence that there is a sufficiently significant likelihood that the defendant's product caused his harm, from those in which such likelihood is absent on account of only casual or minimal exposure to the defendant's product.

*Gregg v. V-J Auto Parts, Co.*, 943 A.2d 216, 225 (Pa. 2007). In cases involving mesothelioma, "the frequency and regularity prongs become less cumbersome" as that condition has the potential to develop after minor exposures to asbestos. *Linster*, 21 A.3d at 223.

The Pennsylvania Supreme Court has recognized that at summary judgment, it is appropriate for a court

> to make a reasoned assessment concerning whether, in light of the evidence concerning frequency, regularity, and proximity of a plaintiff's/decedent's asserted exposure, a jury would be entitled to make the necessary inference of a sufficient causal connection between the defendant's product and the asserted injury.

*Gregg*, 943 A.2d at 227. The trial court thus bears a "duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation." *Krauss* 104 A.3d at 568 (citation omitted).

Two cases inform the proper application of the frequency, regularity, and proximity factors: *Gregg* and *Rost v. Ford Motor Co.*, 151 A.3d 1032 (Pa. 2016). In the former case, this Court ultimately upheld the grant of summary judgment in favor of a parts supplier. In the latter case, the Pennsylvania Supreme Court refined the application of the frequency, regularity, and proximity factors with respect to causation and damages following trial.[5]

---

[5] Although *Rost* involved issues that arose following trial, the decision highlights the proper application of frequency, regularity, and proximity

In **Gregg**, the plaintiff asserted that the decedent worked with brake linings and clutches on cars and trucks throughout his lifetime and died of pleural mesothelioma. **Gregg v. V-J Auto Parts Co.**, 975 A.2d 1171, 1172 (Pa. Super. 2009). The plaintiff, the decedent's son, brought an action against the supplier of the parts. **Id.** In support, the plaintiff produced three depositions in support of the action against the supplier.

First, the decedent's daughter testified that the decedent sometimes worked on brakes and purchased products from the supplier's store. **Id.** at 1177. However, she was unaware of whether these products contained asbestos and could not recall the particular products purchased from the subject store or how many purchases were made. **Id.**

Second, the plaintiff was also deposed and testified that the decedent worked on automobiles when plaintiff was young. **Id.** at 1177-78. The plaintiff was unsure whether the particular brakes used by the decedent contained asbestos and could not identify any particular manufacturer of the products used by the decedent. **Id.** at 1178. However, he later learned that all brakes in that period of time contained asbestos. **Id.** at 1178. The plaintiff was not able to recall what parts the decedent purchased from the subject store, but did recall that decedent also purchased brakes from a different store. **Id.**

---

factors, which may also be applied at the summary judgment stage of a proceeding.

Third, the decedent's coworker testified that he helped the decedent install brakes, but could not recall how many times he did so or the parts used. *Id.* The coworker asserted he went to the subject store with the decedent to buy parts. *Id.* He assumed, but did not know for certain, that the brakes contained asbestos. *Id.*

The supplier filed a motion for summary judgment arguing that the plaintiff could not establish any of those products contained asbestos. *Id.* at 1172. The supplier asserted the plaintiff could only show that the decedent used brake products purchased from its store on two or three occasions. *Id.* The trial court initially granted summary judgment in favor of the supplier based on insufficient product identification evidence, but later ruled that the plaintiff failed to establish the frequency, regularity, and proximity of the decedent's exposure to the supplier's products. Following a series of appeals that reached the Pennsylvania Supreme Court, the Pennsylvania Supreme Court remanded the plaintiff's appeal from the grant of summary judgment against the plaintiff to this Court.

Upon remand, this Court affirmed the trial court's ruling. Specifically, we reasoned:

> there is simply no evidence to support the conclusion that the decedent had more than *de minimis* contact with [the supplier's] products. The type of product bought and the type of product used by decedent that was purchased at [the supplier's] store, was generally unknown. There is no evidence at all to support the conclusion that the decedent had definite contact with [the subject store's] products, which contained asbestos.

*Id.* at 1178.

In *Rost*, the plaintiff proceeded to trial against Ford. At trial, the plaintiff asserted that he worked at a garage for three to four months following his graduation from high school in 1950. *Id.* at 1037. He worked as a "gofer," and he did basic car maintenance and was responsible for cleaning the garage. *Id.* He testified that he was exposed to asbestos, when he removed asbestos lining from brake shoes and threw them away, when other mechanics would use compressed air to blow out dirt and debris inside brake drums (blow outs), and when he cleaned dust and debris from "brake jobs, blow outs, and clutch and engine work." *Id.*

In *Rost*, the plaintiff presented evidence that eighty-five to ninety percent of the vehicles serviced at the garage were Ford vehicles. *Id.* Ford also stipulated that "all model year Ford vehicles, from 1945 until 1950, used asbestos brakes and asbestos clutches, and that Ford's brakes and clutches were forty to sixty percent chrysotile asbestos by weight." *Id.*

After working at the garage for three to four months, Appellant had several jobs. In at least one of those jobs, the plaintiff was exposed to asbestos "at pretty high levels" when working in proximity to turbines at Metropolitan Edison between 1960 and 1970. *Id.* at 1038. By 1972, however, the plaintiff began wearing a mask in the areas with high levels of asbestos. *Id.*

The plaintiff in *Rost* presented expert evidence regarding the amount of asbestos fibers he would have been exposed to at the garage. *Id.* at 1040.

The plaintiff's causation expert also opined that the exposure to asbestos at the garage significantly contributed to the development of the plaintiff's mesothelioma. *Id.*

The jury in *Rost* found in favor of the plaintiff and awarded a total of $994,800 in damages. *Id.* at 1041. The jury also found that the plaintiff's exposure to asbestos products from three companies during the plaintiff's tenure at Metropolitan Edison was a substantial cause of the plaintiff's mesothelioma. *Id.* The trial court thus molded the verdict and awarded damages against Ford in the amount of $248,700. *Id.*

Ford appealed, and this Court affirmed. The Pennsylvania Supreme Court granted allowance of appeal, in part, to illuminate further "the proper application of the 'frequency, regularity, and proximity' criteria in asbestos product liability litigation." *Id.* at 633.

The *Rost* Court reiterated two basic precepts:

> First, expert testimony based upon the notion that "each and every breath" of asbestos is substantially causative of mesothelioma will not suffice to create a jury question on the issue of substantial factor causation. Second, to create a jury question, a plaintiff must adduce evidence that exposure to defendant's asbestos-containing product was sufficiently "frequent, regular, and proximate" to support a jury's finding that defendant's product was substantially causative of the disease.

*Id.* at 646 (footnote omitted).

The *Rost* Court rejected Ford's argument that the plaintiff prevailed based on "each and every breath" evidence. Upon a detailed review of the record, the Court the plaintiff's expert testified regarding the effect of asbestos

- 11 -

exposure and offered a proper opinion that the plaintiff's exposure to asbestos at the garage was a substantial factor in the plaintiff's development of mesothelioma.

The **Rost** Court further rejected Ford's argument that the plaintiff failed to establish that his exposure to asbestos at the garage was a substantial causative factor compared his exposure to asbestos at Metropolitan Edison. The Court emphasized that "evidence of 'frequent, regular, and proximate' exposures to the defendant's product creates a question of fact for the jury to decide." **Id.** at 1050 (citing **Gregg**, 943 A.2d at 226-27). Thus, a plaintiff need not "exclude every other possible cause for his or her injury[.]" **Id.** at 1051.

Mindful of the foregoing principles, and before addressing Appellant's specific claims, we summarize the undisputed portions of the record. Here, the record established that Appellant was exposed to dust containing asbestos at Alray Tire.[6] Felgar and Price both testified that they believed the brakes they used contained asbestos. They indicated asbestos brakes were the best products at the time, and that all brakes would have contained asbestos at the time Decedent worked at Alray. Felgar identified Raybestos as one brand of brakes used at Alray, and Price identified Raybestos and Bendix as the two brands of brakes he remembered most. Price testified that Decedent would

---

[6] The description of brake replacements proffered by Appellant was substantially similar to that in **Rost**.

have used the same brands. Price recalled that the packaging material for one brand of brakes indicated that it contained asbestos.

Further, based on the record, it can be inferred that Appellant's responsibilities as a mechanic required closer contact with asbestos products than those of the plaintiff in *Rost*. We also acknowledge that Decedent worked at Alray for approximately ten years versus the *Rost* plaintiff's career of several months as a "gofer."

As to Advance and Automotive, Felgar described Alray's parts suppliers in the following exchange in his deposition:

Q    . . . Did you order straight from the parts company?

A    From the parts store, the local parts store.

Q    Do you recall any of parts stores you ordered from at Alright [sic] Tire?

A    Auto Parts Plus was very close on Rodi Road. They became Auto Parts Plus part way through, because they were bought out by somebody else. What they were before that, I can't tell you. Beacon Auto Parts and Advanced Auto Parts, also.

DEFENSE COUNSEL: What was that last one?

[Felgar]    Advanced.

[Appellant's counsel]: Advanced.

[Appellant's counsel]    Can you provide any address for Beacon Auto Parts or just a city or street?

[Felgar]    Beacon was on Frankstown Road. I don't remember the street address. Parts Plus was on Rodi Road. Like I said, it was two blocks or a half a mile from the Duff Road intersection. So we got most of our parts there, because of the location being close to us.

Q    Would the mechanics also order from these place?

- 13 -

A      Yes, depending if they had the brakes that we needed or something specific or the price was a possibility.

R.R. at 517a.[7]

As to Ford, Felgar testified that he also ordered parts from dealerships, including a "Ford Dealer in Monroeville" and "Biondi Lincoln Mercury/Ford dealer." *Id.* at 445a.  Additionally, Felgar testified that Alray predominantly serviced Chevrolets and Fords.  *Id.* at 452.

Price confirmed that Alray would obtain parts from the "Auto Parts Plus" and "Beacon Auto Parts."  Price also testified that he and Felgar worked mainly on Chevrolets, Fords, and Dodges.

### Advance's Motion for Summary Judgment

Advance, in its motion for summary judgment, noted that Felgar testified that he ordered parts from three stores, including "Advanced Auto Parts."  R.R. at 300a-301a.  Advance did not dispute that there was a corporate connection between Advance and the "Advanced Auto Parts" store referred to by Felgar.  *See id* at 301a.  However, Advance argued that Felgar's testimony on cross-examination revealed that he could not state with certainty whether he purchased parts from the "Advanced Auto Parts" store.  *Id.*

Specifically, Advance cited to the following portion of Felgar's deposition:

_____

[7] We cite to the reproduced record in this appeal for the convenience of the parties.  We note that Appellant has not provided full transcripts of the depositions of Felgar and Price, and that our review is limited to the excerpts provided by the parties in their motions and responses.

- 14 -

[Advance's counsel]  So I want to ask you some questions about [the "Advanced Auto Parts" store Felgar identified during direct examination]. Do you know what their address was?

[Felgar]  I'm not sure. I did remember that. Beacon, I mentioned, was taken over by Car Quest. So it was part Beacon and part Car Quest during the time period. It was the one that was up on Frankstown Avenue.

Q      Do you know when they were taken over?

A      During the period I worked there. I can't say for sure.

Q      When you were being asked questions earlier, you said you thought Advanced Auto. Do you know if Alright [sic] purchased from Advanced?

A      To say with exact surety, I really don't. You have to remember this is back 30, 40 years ago. I was trying to recall that.

Q      Would I be correct in saying then that you cannot offer any testimony that [Decedent] would have installed or removed brakes that were supplied by Advanced Auto?

A      I think I bought from Advanced, but can I swear to it after 40 years? Could you? I can't.

Q      No, I understand. Would it be fair to say that you don't know the supplier of any of the brakes that were removed at Alray?

[Appellant's counsel]: Objection.

Q      That [Decedent] removed? Excuse me.

A      No, there's no way of knowing when you take them off, unless you had remembered putting them on.

Q      And same would be true for the brand? You wouldn't know what brand was being removed?

[Appellant's counsel]: Objection.

A      No, there's nothing on the pad of the shoe that tells you what brand they are.

R.R. at 345a-46a.   Advance thus argued that there was "no evidence that [Decedent] removed or installed a brake supplied by Advance during his employment at Alray."  *Id.* at 301a (Advance's Mot. for Summ. J. at 5).

In response, Appellant emphasized that Felgar testified that he ordered from the "Advanced Auto Parts" store.  Appellant further alleged that "Beacon Auto Parts" was affiliated with Advance based on Felgar's testimony that "Beacon Auto Parts" turned into "Car Quest."  R.R. at 506a.  According to Appellant, "[a] cursory internet search" indicated that "Advanced Auto Parts" and "Carquest" were part of the same company headquartered in Roanoke, Virginia.  *Id.*

Advance replied, denying any corporate connection between the "Beacon Auto Parts" store.

> [Appellant's] counsel makes a last-ditch effort to hold Advance in this claim by claiming that they are the same company as Carquest and that Beacon Auto Parts, another auto parts store Mr. Felgar made purchases from for Alray, is affiliated with Carquest based on an assumption by Mr. Felgar.  However, as the attached documents show, Beacon Auto Parts is not affiliated with Carquest and/or Advance.[8]
>
> Beacon Auto Parts still exists today and it has been confirmed that they had a location on Frankstown Road as testified to by Mr. Felgar. However, Beacon Auto Parts is affiliated with the Aftermarket Auto Parts Alliance a/k/a Auto Value. Auto Value is comprised of over 50 independent shareholders.  As indicated by the Shareholders list attached to this Reply, neither Advance nor

---

[8] Advance attached to its reply an internet "yellow pages" that listed a "Beacon Auto Parts" store on Frankstown Road, as well as internet pages bearing an Auto Value emblem and apparently displaying (1) an image of a Beacon Auto Part/Auto Value store in North Carolina and (2) a list of shareholders in Auto Value, which did not include Advance. R.R. at 583a-606a.

Carquest are shareholders in Auto Value. In fact, Auto Value is a competitor of Advance. Therefore, Carquest has no liability for any purchases allegedly made at Beacon Auto Parts. Additionally, even if the Court is to find that Advance has liability for Beacon Auto Parts, there is no evidence that [Decedent] installed a brake purchased from Beacon Auto Parts. Mr. Felgar was never asked which specific auto parts he purchased from Beacon.

R.R. at 579a. Appellant did not file a sur-reply to Advance's reply or otherwise move to strike the attached documents.

The trial court granted summary judgment in favor of Advance, concluding that

Appellant has not produced sufficient evidence [Decedent] was exposed to asbestos from auto parts supplied or distributed by [Advance]. To the contrary, [Decedent's] former manager, [E.] Wayne Felgar, only gave general deposition testimony that [Advance] was one of the parts stores from whom Alray Tires purchased auto parts. In fact, Mr. Felgar testified he could not specifically recall **anything** that might have been purchased from [Advance] during the time Mr. Felgar worked for Alray Tires. Moreover, [Decedent]'s former coworker, John Price, made **no reference** to [Advance] in his deposition testimony.

Trial Ct. Op., 12/1/17, at 24.

Appellant asserts that (1) Advance is a supply company that distributed asbestos-containing brakes; (2) Felgar testified he purchased brakes from "Carquest and Advanced Auto[;]" and (3) Felgar believed those brakes contained asbestos. Appellant's Brief at 24. Thus, Appellant contends the record, when read in a light most favorable to her as the non-moving party, established Decedent's exposure to asbestos-containing brake from Advance. ***Id.***

- 17 -

Following our review, we discern no basis to disturb the trial court's ruling as to Advance. There was no direct testimony that Appellant was exposed to an asbestos part supplied by either the "Advanced Auto Parts" store or the "Beacon Auto Parts." Appellant relied on general assertions that Alray would have obtained parts from "Advanced Auto Parts" store or the "Beacon Auto Parts" and that the brakes purchased would have contained asbestos. This evidence provided no reasoned basis to determine the frequency of Appellant's exposure to asbestos-containing parts supplied specifically by Advance. Thus, even assuming some products from Advance contained asbestos, a finder of fact would have no basis to assess whether the exposure to Advance's products was substantial or *de minimis*. **Cf. Gregg**, 975 A.2d at 1178. Thus, Appellant's evidence that Decedent's exposure to Advance's asbestos-containing products was too speculative to survive summary judgment. **See Krauss** 104 A.3d at 568.

### Automotive

Automotive, in its motion for summary judgment, averred that the record contained no evidence that Decedent was exposed to any product that it manufactured or distributed. R.R. at 210a.

Appellant responded that Felgar testified that he usually purchased parts from "Auto Parts Plus," which "was very close [to Alray] on Rodi Road." See R.R. at 383a, 395a. Appellant asserted that

> According to [Automotive]'s website, "The AUTOMOTIVE DISTRIBUTION NETWORK is the umbrella organization for three of the premier groups in the automotive aftermarket: **Parts Plus**,

Independent Auto Parts of America, and Auto Pride. . . .” **Parts Plus**, identified by Mr. Felgar is under the umbrella of [Automotive].  Asbestos-containing products including brakes were bought by Mr. Felgar from **Parts Plus** and installed by [Decedent]. When all the evidence is taken into consideration [Automotive]'s summary judgement motion must be denied.

R.R. 383a-384a (emphasis added).

In its reply, Automotive further denied any association to the “Auto Parts Plus” store referred to by Felgar.  R.R. at 543a.  According to Automotive:

No documentary evidence is produced that demonstrates that a local parts store called Auto Parts Plus is the same as or is affiliated with Parts Plus. This is just [Appellant]'s counsel's incorrect presumption that because the two entities have similar names that they must be the same. That presumption, as noted, is not supported by any testimony or document that describes Auto Parts Plus as part of Parts Plus.

Attached hereto as Exhibit “A” is the affidavit of Robert Johnson, Vice President and General Counsel of Automotive Distribution Network, LLC. As noted by Mr. Johnson, Automotive Distribution Network, LLC was not created until 2005, thirty years after it is alleged [Decedent]'s employer began to buy automotive parts from local parts stores. Moreover, Automotive Distribution Network, LLC does not purchase, possess, or sell automotive products and only acts to negotiate purchase terms for the owners of the network. As a result, Automotive Distribution Network, LLC was not in existence at the time of [Decedent]'s alleged exposure to asbestos-containing products and it could not have been in the position to sell products to [Decedent]'s employer.[fn1]

> [fn1] Defendant Automotive Distribution Network, LLC did not produce the affidavit of Mr. Johnson in support of its motion for summary judgment because there was no allegation in the complaint that Auto Parts Plus was the same as Parts Plus or that it was in any way affiliated with Automotive Distribution Network, LLC. It is only because the unfounded and conflated statements of [Appellant]'s counsel regarding an alleged connection that Automotive Distribution Network, LLC finds it necessary to produce the affidavit now.

- 19 -

R.R. at 543. Appellant did not file a sur-reply to Advance's reply or otherwise move to strike the attached documents.

The trial court concluded:

With regard to Appellee Automotive Distribution Network, LLC, Appellant has produced no evidence [Decedent] was exposed to asbestos from auto parts supplied or distributed by Automotive Distribution Network, LLC. To the contrary, the only two exhibits attached to Appellant's Answer to Appellee Automotive Distribution Network, LLC's Motion for Summary Judgment are the deposition transcripts of [E.] Wayne Felgar and John Price, and neither witness mentions Automotive Distribution Network, LLC anywhere in those transcripts.

Trial Ct. Op. at 25.

Appellant asserts that (1) Automotive "admits it is also known as Auto Parts Plus[,]" a supply company that distributed asbestos-containing brakes; (2) Felgar testified he purchased brakes from "Autoparts Plus[;]" and (3) Felgar believed those brakes contained asbestos. Appellant's Brief at 25. Thus, Appellant contends the record, when read in a light most favorable to her as the non-moving party, established Decedent's exposure to asbestos-containing brakes from Automotive. *Id.*

We agree with the trial court that Appellant failed to establish a genuine issue of fact that Automotive supplied asbestos-containing products to Alray. There was no direct evidence that Automotive was affiliated with or a successor in interest to the "Auto Parts Plus" store on Rodi Road. Appellant's further attempt to establish that Automotive was affiliated with the "Auto Parts Plus" store by way of a "cursory internet search" would provide no basis to

draw a reasonable inference that Automotive supplied parts to Alray during Decedent's tenure. *See Cummins*, 495 A.2d at 967. Thus, we conclude that trial court's entry of summary judgment in favor of Automotive was proper. *See Krauss*, 104 A.3d 556, 562-63

## Ford

Ford, in its motion for summary judgment, asserted:

> [fn1] Ford is only liable for original equipment (OE) brakes either removed from or installed on Ford vehicles. Ford OE replacement brakes are purchased from a Ford dealership and are not available at aftermarket stores. Aftermarket brakes, sold under various brand names, are generally sold at auto supply stores and can be purchased as replacement brakes for Ford and other manufacturers' vehicles. Installing and/or removing aftermarket brakes from a Ford vehicle does not result in any exposure to Ford OE brakes or any exposure attributable to Ford.
>
> Ford is not liable for any alleged exposures that may have occurred from products it did not manufacture, i.e., aftermarket replacement brakes installed on Ford vehicles.[fn2] Since [Appellant] has not produced any evidence that [Decedent] was ever exposed to Ford original equipment brakes [Appellant]'s evidence of record fails to meet the "frequency, regularity, and proximity" standard for defeating summary judgment . . . .
>
>> [fn2] Ford is not liable for other manufacturers' products, such as aftermarket brakes or clutches, that are used on a Ford vehicle.

R.R. at 225a-26a (citations omitted).

Additionally, Ford asserted that the record established that Appellant could not establish that his exposure to parts obtained from its dealerships was frequent and regular. R.R. at 227a. In support, Ford cited the following portions of Felgar's deposition testimony on cross-examination

[Felgar]    Like I said we normally only bought brakes from the dealer if the customer specified they wanted them from the dealer, which wasn't very often or nonexisting, or someone else didn't have a supply of them, then we'd go there to get them, but that was true with everything else, also.

Q    But you have no specific recollection of purchasing a replacement brake from a Ford dealer?

A    No.

R.R. 242a-43a.

Ford also noted the following exchange during Price's deposition:

Q    How about for the dealership, [were parts] delivered or did somebody go out and get them?

[Price]    That was fifty/fifty, every once and a while we'd go out and get them. Sometimes they would deliver them to us. I mean, we didn't have to buy parts at a dealership that often, because the parts stores normally had them.

Q    Now, do you recall any specific dealerships that Alray ordered parts from?

A    No. Not -- not specific names of them . . . .

R.R. 250a-51a.

Appellant responded to Ford's motion for summary judgment as follows:

Mr. Price and Mr. Felgar testified [Decedent] did brake changes on Ford vehicles. Mr. Felgar testified he purchased automotive parts from Ford dealerships. Mr. Price testified Mr. Gilbert installed asbestos-containing brakes on multiple vehicles, including Ford, and scuffed up the brake pads prior to install. Mr. Price testified there was dust throughout the shop and Mr. Gilbert did not wear a mask.

In discovery responses, . . . Ford admits that it sold vehicles and aftermarket service parts which included asbestos-containing brake linings. . .. Ford further admits that these linings contained chrysotile asbestos between 40% and 60% by weight and that

they continued to use asbestos in brake linings until 1997.[9] When all the evidence is taken into consideration Ford's motion for summary judgement must be denied.

R.R. 442a.

In its reply, Ford asserted:

Mr. Felgar was unable to testify that he ever ordered Ford brakes for use at Alray Tires. [Appellant] mischaracterizes Mr. Felgar's testimony and only cites to the portions regarding what "would have" happened and the possible options available if brakes were not available "through the aftermarket." However, when asked directly, Mr. Felgar was unable to testify that he saw [Decedent] install a set of replacement brakes bought from a Ford dealership on any Ford vehicles. Accordingly, any argument that Mr. Gilbert installed Ford replacement brakes is speculative.

[Appellant's] opposition misconstrues the testimony: Mr. Felgar testified that "some parts" were bought from car dealerships, "but brakes was normally not one of them." Mr. Felgar testified that brakes would be purchased from a dealership if they were not available through the aftermarket-and that if that had happened, brakes may have been purchased at the Ford dealership. In no way is this evidence that [Decedent] removed or installed Ford brakes. In fact, Mr. Felgar specifically testified that he did not have a specific recollection of purchasing a replacement brake from a Ford dealer. Mr. Felgar specifically testified that he was unable to testify about how many Ford vehicles worked on at Alray, and he

_____

[9] The specific admission by Ford states:

Ford believes asbestos-containing friction products were incorporated into its vehicles since it began selling mass production vehicles in the early 1900s. Ford states that the use of asbestos-containing friction products were phased out of the majority of Ford's vehicles by 1984. By 1993, the only vehicles in which asbestos-containing friction products were still used were low-volume limousine applications. Their use in limousines was discontinued in 1997.

R.R. at 466a.

was unable to testify about the brand of brakes [Decedent] would have removed from a vehicle before performing a brake change. Any allegation that [Decedent] installed Ford brakes on any of the Ford vehicles he may have worked on is purely speculative.

R.R. 560a-561a (citations to exhibits omitted).

The trial court granted summary judgment in favor of Ford, reasoning:

With regard to [Ford], Appellant has not presented sufficient evidence [Decedent] was exposed to asbestos from brakes manufactured supplied, and/or distributed by [Ford]. While Appellant produced [Ford]'s interrogatories in which Ford stated it sold vehicles and aftermarket service parts, including asbestos-containing brake linings and pads, through franchised Ford dealers and authorized distributors in the United States during the relevant time period, Appellant produced **no evidence** that [Decedent] was exposed to asbestos from working with or around Ford brakes. To the contrary, [Decedent]'s former manager, [E]. Wayne Felgar, only gave general deposition testimony that Ford was one of the makes of vehicles the mechanics worked on at Alray Tires. While Mr. Felgar referenced a "Ford Dealer in Monroeville" and a "Biondi Lincoln Mercury/Ford dealer" from whom Alray Tires purchased auto parts, when further questioned during his deposition he could not say whether he had any specific recollection of ever ordering or purchasing replacement brakes from Biondi Mercury. Likewise, [Decedent]'s former coworker, John Price, only gave general deposition testimony that Ford was one of the main brands of vehicles [Decedent] worked on. While both of the aforementioned fact witnesses gave general testimony about [Decedent] performing brake jobs at Alray Tires, Appellant has produced **no evidence** which specifically ties [Decedent] to the performance of the removal and/or installation of Ford brakes, or even places [Decedent] in the proximity of other Alray Tires employees who were doing such work with Ford brakes.

Trial Ct. Op. at 23-24.

Appellant reiterates in this appeal that there was evidence that (1) Felgar ordered parts from two Ford dealerships; (2) Ford sold vehicles and aftermarket parts that contained asbestos during Decedent's entire career at

Alray, and during the time he did thousands of brake changes; (3) Ford sold brake linings that were forty to sixty percent asbestos by weight; and (4) the Ford used asbestos products until 1997.[10] Appellant's Brief at 46.

Appellant further contends that the trial court erred in concluding that without evidence of the identity of the manufacturers of the asbestos-containing parts installed on the Ford vehicles, Ford had no liability. **Id.** Appellant suggests that this reasoning:

> harkens to a quasi "bare metal"[11] defense. According to the trial court unless it could be established that the asbestos-containing replacement component parts were also manufactured by Ford, Ford could not be held liable. This is simply not the case under current Pennsylvania law."

---

[10] Appellant, for the first time on appeal, suggests that Ford recommended the use of asbestos-containing brake linings for its vehicle. Appellant does not point to any portion of the record supporting that assertion.

[11] The district court for the United States Eastern District of Pennsylvania stated:

> Indeed, as asbestos litigation has evolved, and the major manufacturing defendants have declared bankruptcy, the litigation has moved away from the manufacturers of asbestos, and defendants in the cases now pending before this Court are typically those that manufactured so-called "bare-metal" products that contained or were later encapsulated in asbestos.
>
> > Although litigants often refer to the defense raised herein as the "bare-metal defense," it is more properly understood, as explained below, as a challenge to a plaintiff's prima facie case to prove duty or causation.

***Conner v. Alfa Laval, Inc.***, 842 F. Supp. 2d 791, 793 (E.D. Pa. 2012).

*Id.* at 46-47. Appellant provides no citations to law or further discussion for this argument.

As to Appellant's arguments based on the record, we are constrained to conclude that Appellant failed to establish a genuine issue of fact that he was exposed to products associated with Ford. At the outset, we reiterate that in *Rost*, there was deemed to be sufficient exposure to not only survive summary judgment but prevail at trial. However, in *Rost*, Ford conceded that all Ford vehicles contained asbestos parts in the five years preceding the plaintiff's employment at the garage in 1950. *Rost*, 151 A.3d at 1037. Thus, there was evidence from which to draw an inference that the plaintiff would have been exposed to original parts on Ford vehicles, which were a substantial portion of the garage's business.

Here, in contrast, Appellant relies on Ford's admission that a phase-out of asbestos products did not occur in the majority of its vehicles until 1984, but that a full phase-out did not occur until 1997. The admission suggests that some Ford vehicles would have original asbestos parts installed during the time Decedent was at Alray from 1975 and 1985. However, Appellant did not adduce evidence of when Ford's phase-out started, the scope of the phase-out, or any other information regarding how many Ford vehicles could have contained original asbestos-containing parts during Decedent's time at Alray. Similarly, Appellant provided information in the record to assess Appellant's exposure to original parts on Ford vehicles, as opposed to replacement parts from other manufacturers or suppliers. Thus, even if Alray primarily serviced

Ford, Chevrolet, and Dodge vehicles, the record did not contain adequate information to infer that the frequency of Decedent's contact with the asbestos parts original to Ford vehicles or bearing Ford's replacement parts was more than *de minimis*. **See Rost**, 151 A.3d at 1037; **Gregg**, 975 A.2d at 1178.

With respect to Decedent's exposure to Ford's aftermarket brakes purchased from Ford dealerships, we agree with the trial court that Appellant's evidence was inadequate. Appellant relies on bare assertions that Alray ordered parts from two Ford affiliated dealerships. As noted by the trial court, there was no direct evidence that Felgar or any of the other mechanics ordered Ford brakes from the dealership. Indeed, Felgar and Price both testified that they did not order parts from the dealerships often and neither could remember whether they ordered brakes. Accordingly, Appellant has provided no evidence from which a finder of fact could reasonably assess the frequency of Decedent's exposure to Ford products. **See Gregg**, 975 A.2d at 1172.

We also discern no merit to Appellant's argument that the trial court erred in concluding that Ford could not be held liable for original parts installed on a Ford vehicle but were manufactured by another party. Put simply, there is no support for Appellant's suggestion that the trial court granted summary judgment in favor of Ford on that basis. Moreover, Appellant fails to develop any argument for his claim that Ford could be held liable for replacement parts installed on a Ford vehicle but were manufactured by another party. **See** Pa.R.A.P. 2119(a); **McCabe v. Marywood Univ.**, 166 A.3d 1257, 1264 (Pa.

Super. 2017). Thus, we decline to address that claim. Accordingly, Appellant's claim of legal error warrants no relief.

In sum, we conclude that the trial court appropriately determined that there was insufficient evidence of Decedent's exposure to asbestos in Appellees' parts. Moreover, we conclude that Appellant failed to raise genuine issues of fact that the exposure to Appellees' parts was sufficiently frequent and regular. Having reviewed the record, we discern no merit to Appellant's overarching claim that the trial court erred in failing to apply the proper standard of review.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/18